**BROTHERHOOD OF TEAMSTERS AND AUTO TRUCK DRIVERS LOCAL #70, Petitioner–Appellant,**

v.

**INTERSTATE DISTRIBUTOR COMPANY, Respondent–Appellee.**

No. 86–1919.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1987.

Decided Nov. 13, 1987.

---

David A. Rosenfeld, San Francisco, Cal., for petitioner-appellant.

Randolph C. Roeder, San Francisco, Cal., for respondent-appellee.

Before FLETCHER and REINHARDT, Circuit Judges, and KENYON,\* District Judge.

\* Honorable David V. Kenyon, United States District Judge, Central District of California, sitting by designation.

REINHARDT, Circuit Judge:

This appeal presents a not so novel question: When one of the parties to a collective bargaining agreement seeks to compel arbitration of a grievance pursuant to an arbitration clause contained in the agreement, and the other party claims that the agreement expired or was terminated before the conduct giving rise to the grievance occurred, who decides whether the agreement actually expired or was terminated—the court or an arbitrator?

## I. *Facts*

The Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 and the Interstate Distributor Company entered into a collective bargaining agreement that was effective on April 1, 1982. The agreement contained a broad arbitration clause: to wit, "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union" was to be resolved by an arbitrator. The contract provided that arbitral decisions "shall be final and binding."

The collective bargaining agreement also contained a standard termination clause. That provision read:

This agreement shall be in full force and effect, unless otherwise provided as of the first day of April, 1982, and shall remain in full force and effect from that date through the thirty-first day of March, 1985, and shall be automatically renewed thereafter from year to year unless [either] party to this Agreement shall give written notice to the other of its desire to change or modify said Agreement. Said written notice to be given not more than ninety (90) days nor less than sixty (60) days prior to any anniversary date of this Agreement.

On January 23, 1985, Interstate wrote the Teamsters stating that it desired "to change and/or modify the agreement between the parties." Approximately a week later, the union replied, saying that it too was willing to "open" the Agreement.

Nothing further transpired until June, when Interstate wrote the union that it was going to withdraw recognition at the end of the month. According to the union, the company then violated the agreement by changing some of its operations on July 2. On the following day, the Teamsters disputed the company's right to make the changes and requested that the dispute be submitted to arbitration.

Interstate refused to arbitrate because, it argued, the contract had been terminated some three months earlier, and along with it any obligation to arbitrate future disputes. The Teamsters brought suit to compel arbitration.[1] The district court agreed with Interstate that the exchange of letters of January 1985 effected a termination of the collective bargaining agreement as of the end of the contract term. Accordingly, it denied the Teamsters' petition to compel arbitration and granted Interstate's motion for summary judgment. The Teamsters appeal.

## II. *Discussion*

The parties do not deny that the agreement to arbitrate contained in the 1982 collective bargaining contract covers grievances over changes in operations or working conditions. The only question is whether that agreement to arbitrate expired or was terminated on or about March 31. *See generally* F. Elkouri & E. Elkouri, *How Arbitration Works* 212–21 (4th ed. 1985).

In response to the union's petition to compel arbitration of the dispute over the change in operations, Interstate argued that because any change occurred only after the contract between the parties had expired or been terminated, no agreement to arbitrate the dispute existed. Interstate contended that any disagreement regarding the status of the contract must be resolved by the court, not an arbitrator.

Interstate's argument is, essentially, that the question whether a contract to arbitrate a particular dispute is in effect is always one for the court to decide.

Generally, as Interstate says, courts not arbitrators decide whether there is an agreement to arbitrate a dispute. Such questions arise in two different contexts. Most often, they arise with respect to whether an arbitration agreement contained in an existing collective bargaining agreement applies to a particular disagreement between the parties. In such case, it is almost always the court which decides whether the arbitration agreement applies to the particular dispute. In doing so, however, the court resolves all doubtful questions in favor of coverage under the arbitration agreement. Thus, most often, the dispute ends up before the arbitrator anyway. *See Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). While an arbitration clause could be drafted in such a manner as to authorize an arbitrator to resolve disagreements over the scope of the clause (as well as the merits of the contractual disputes), courts do not ordinarily construe standard arbitration clauses, even the broader ones, as doing so. Rather the courts reason that where there is a legitimate disagreement over the scope or coverage of the arbitration clause itself, it is unclear whether the parties have contracted for arbitration of the particular dispute and a court must decide that question.

The other type of question that commonly arises is the type that confronts us here:

1. In fact, the union initially requested that the grievance be submitted to the contractually created joint labor-management committee. Where a party refuses to submit a dispute to a grievance board or otherwise to process a grievance in the manner provided in the collective bargaining agreement, a petition to compel arbitration is appropriate. All procedural requirements are deemed complied with, for purposes of the petition, and the proper remedy is an order compelling arbitration. Any procedural questions that may exist, such as timeliness, the form of the demand and exhaustion of steps in the grievance procedure, must be presented to the arbitrator.

whether there is a collective bargaining agreement—and thus an arbitration provision—in effect at a particular time. In some instances, the analysis is a simple one; if the parties disagree as to whether they ever entered into any arbitration agreement at all, the court must resolve that dispute. However, the problem is more complicated where, as here, the parties agree that they entered into an agreement containing an arbitration clause but disagree over whether the contract has expired or been terminated. Before considering how that type of disagreement should be resolved, we should examine, at least briefly, the Supreme Court's most recent labor arbitration decision.

In *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Court said "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." 106 S.Ct. at 1418. Under *AT & T Technologies*, the parties to a collective bargaining agreement are free to provide that an arbitrator shall decide the question whether they agreed to arbitrate a dispute, i.e., the question of substantive arbitrability, but only if they leave no doubt that such was their intent. As *AT & T Technologies* says, where the parties "clearly and unmistakably provide otherwise," the general rule that courts must decide the question does not apply. Even prior to *AT & T Technologies*, we reached a similar conclusion. In *George Day Construction Co. v. United Brotherhood of Carpenters & Joiners, Local 354*, 722 F.2d 1471, 1474–75 (9th Cir.1984), we stated, "because an arbitrator's jurisdiction is rooted in the agreement of the parties, ... the parties may agree to submit even the question of arbitrability to the arbitrator for decision."

■ In the case before us, the real question is one step removed from the issue of substantive arbitrability discussed in *AT & T Technologies*. The disagreement between the parties here is not primarily over what the arbitration clause provides, or what its scope is, but rather concerns the effect to be given a letter—or an exchange of letters—under the terms of the termination or expiration clause of the parties' collective bargaining agreement. In short, the real dispute is over the proper meaning or interpretation of the termination clause.

Where, as here, the petitioner claims that the parties have agreed to allow an arbitrator to decide whether a contract containing an arbitration agreement has been terminated or remains in effect, the proper judicial inquiry is not the one that the district court made—i.e., what does the termination clause provide and how should it be construed?—but rather, have the parties agreed that an arbitrator should decide that question? And, where as here, the agreement contains a broad arbitration clause covering all disputes concerning the meaning of the terms and provisions of the agreement and the clause does not expressly exclude disputes over the termination provision, the answer is, again, simple. Disputes over expiration or termination must be submitted to arbitration.[2]

The reason that arbitrators rather than courts generally decide whether collective bargaining agreements containing broad arbitration clauses have expired or been terminated is readily apparent. The issue involves the interpretation of the expiration or termination provision of the agreement, and standard arbitration clauses ordinarily provide that such interpretations, like all others necessary to the resolution of disputes over the meaning of the contract, shall be made by an arbitrator. There is usually no dispute, as there is none here, over the scope of the arbitration clause, and there is usually no claim that disputes regarding expiration or termination have been excluded from coverage. Here, as is

---

**2.** In the present case, the arbitration clause is even broader than the ordinary "broad arbitration clause." Here, the parties agreed to arbitrate "any grievance or controversy affecting the mutual relations of the [parties]." A typical broad arbitration clause applies to any disputes or grievances arising out of the collective bargaining agreement or involving its meaning or interpretation.

typical of such cases, Interstate points to no language purporting to exclude termination disputes from the scope of the arbitration clause, nor to any ambiguity or uncertainty in that clause. Rather it relies exclusively on the general rule that courts decide questions of arbitrability. Because the parties' contract provides that the arbitration clause applies to disagreements over termination or expiration, the general rule is simply inapplicable.

There are two ways to characterize the underlying issue here. Neither supports Interstate's position. First, we can view the issue as an ordinary dispute over the meaning of a contract clause—the expiration or termination provision. Since the parties do not contend that such disputes are not within the scope of the arbitration clause, the answer under this method of analysis is evident: The dispute must be arbitrated.[3] Second we can view the question as being of the type described in the portion of *AT & T Technologies* we discussed earlier: is there an agreement to arbitrate in effect? Viewed in that light, the answer is also clear. The exception to the general rule that courts decide such questions applies: the parties have clearly and unmistakably "provided otherwise"; by the terms of the arbitration clause, they have unequivocally agreed to arbitrate the question whether the contract remains in effect or has been terminated. We think the first approach is the proper one; it is clearer, simpler, and sounder analytically.

However, regardless of which approach we use, our answer is the same. We hold that where a dispute exists over whether a contract with an arbitration clause has expired or been terminated, the proper initial inquiry for the court is whether the arbitration clause covers such disputes, not whether the termination clause means what the employer says it means or what the union says it means. From a practical standpoint, our rule leads to the following result: When the collective bargaining agreement contains a broad arbitration clause, the question whether a particular act or failure to act effectively serves to terminate the agreement is to be resolved by an arbitrator.

The rule we apply here is the rule not only in our circuit, but in others as well. Moreover, the rule applies not only to questions of termination but also to questions of expiration and repudiation of collective bargaining agreements. Our leading cases include *California Trucking Association v. Teamsters & Auto Truck Drivers, Local 70*, 679 F.2d 1275 (9th Cir.1981), *cert. denied*, 459 U.S. 970, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982), and *Auto, Marine & Specialty Painters v. Bay Area Sealers*, 577 F.2d 609 (9th Cir.1978).[4] The Second Circuit's leading case is *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80*, 605 F.2d 1290, 1297 (2d Cir. 1979). As *Rochdale* noted, "a claim that the effect of the repudiation was to termi-

---

**3.** It is of no consequence that the issue is raised as a defense by the respondent rather than as an issue to be resolved by the petitioner. Whether offensive or defensive, the issue is the same and must be decided in the identical manner.

**4.** Whatever the merits of our decisions in *Mesa Verde Construction v. Northern California District Council of Laborers*, 820 F.2d 1006, 1009 (9th Cir.1987), *Ion Construction Co. v. District Council of Painters No. 16*, 803 F.2d 1050, 1051 (9th Cir.1986), and of note 5 of *John S. Griffith Construction v. United Brotherhood of Carpenters & Joiners*, 785 F.2d 706, 712 (9th Cir.1986), they are not to the contrary. *Ion* and *Mesa Verde* note a narrow exception to the rule we describe in the text. They permit a district court to decide in the first instance whether an employer has effectively repudiated a section 8(f) prehire agreement. The employer's right to

repudiate is created by, and set forth specifically in, a federal statute rather than, as here, in the collective bargaining agreement itself or in a body of common or other law applicable generally to contract matters. *See Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 269, 103 S.Ct. 1753, 1758, 75 L.Ed.2d 830 (1983) (recognizing employer's right to repudiate as means of "promot[ing] Congress' 'intention ... that pre-hire agreements were to be arrived at voluntarily.'") (quoting *NLRB v. Local Union No. 103, International Ass'n of Bridge, Structural & Ornamental Iron Workers (Higdon)*, 434 U.S. 335, 348 n. 10, 98 S.Ct. 651, 659 n. 10, 54 L.Ed.2d 586 (1978)).

*Mesa Verde* and *Ion* are limited to prehire agreements, and do not affect the principle that when the collective bargaining agreement contains a customary arbitration clause acts of repudiation and other acts of termination must be submitted to arbitration.

nate the contract necessarily requires an interpretation of the terms of the contract" and must be submitted to an arbitrator. *Id.* The Third Circuit has also stated the rule succinctly:

> [W]here the parties have foreseen and provided for a process for renewing their agreement [or for terminating their contract], a dispute ... relating to renewal 'arises out of' the agreement and is therefore clearly within the scope of the arbitration clause.... [D]isputes involving the termination or continuation of contracts are properly arbitrable when renewal or expiration is the subject of specific contract provisions.

*Becker Autoradio USA v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 46–47 (3d Cir.1978).

In the present case, Interstate sent a letter to the union requesting modification of the agreement. It contends that under the agreement this request served to terminate the contract between the parties as of the end of March. A week later, the Union stated that it, too, was willing to "open" the contract, apparently for negotiations. In June, the company again wrote the union, this time saying that it was withdrawing recognition. The parties are in agreement as to the facts. They disagree only as to the meaning and effect of the exchange of letters—as to whether it served to terminate the contract or merely provided an opportunity for renewed bargaining. It is not our role to pass on the merits of the parties' respective positions regarding the meaning and effect of the letters under their collective bargaining agreement. *See AT & T Technologies*, 106 S.Ct. at 1419 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying [controversy] ... [w]hether 'arguable' or not, indeed even if it appears to the court to be frivolous.").

The arbitration clause before us governs "any grievance or controversy affecting the mutual relations of the Employer and the Union." That clearly includes disagreements over whether the collective bargaining agreement has been renewed or has been terminated. Whether the parties' exchange of letters served to terminate their agreement is precisely the type of question the parties—by contract—agreed should be left to an arbitrator. The parties' only disagreement as to whether the petition to compel arbitration should have been granted was over the question whether the contract had been terminated. The district court should not have ruled on the merits of that disagreement; rather it should have ordered that it, along with the underlying dispute over the company's change in operations, be submitted to an arbitrator.

We remand with directions to the district court to grant the petition to compel arbitration. After resolving any preliminary procedural questions that may exist, the arbitrator should decide whether the contract was terminated as of the end of March or whether it remained in existence. If the latter, he should decide the underlying question regarding the validity of Interstate's change in operations. Because the union argues that the arbitration clause remains in effect even if the contract itself did not, an issue which is not presently before us, we express no view as to what further action, if any, the arbitrator should take if he rules that the contract expired or was terminated prior to July 2.[5]

## III. *Conclusion*

We reverse the district court's grant of summary judgment for Interstate and direct the court to grant the Teamsters' petition to compel arbitration.

REVERSED AND REMANDED FOR ENTRY OF AN ORDER COMPELLING ARBITRATION.

---

5. The Union contends that, in light of 29 U.S.C. §§ 158(a)(1) & (a)(5) and N.L.R.B. decisional law interpreting those provisions, even if the contract terminated, the agreement to arbitrate (as well as certain other portions of the collective bargaining agreement) survived the contract term.