HOSPITAL & HEALTH CARE WORKERS, LOCAL 250, S.E.I.U., Petitioner,

v.

CHILDREN'S HOSPITAL OF SAN FRANCISCO; Marshal Hale Memorial Hospital; Mary's Help Hospital of Seton Medical Center; Mt. Zion Hospital and Medical Center; Presbyterian Hospital of Pacific Medical Center; St. Francis Memorial Hospital; St. Mary's Hospital and Medical Center; and Affiliated Hospitals of San Francisco, Respondents.

No. C-88-1792 WHO.

United States District Court, N.D. California.

July 19, 1988.

Paul D. Supton, Van Bourg, Weinbert, Roger & Rosenfall, San Francisco, Cal., for petitioner.

Gregory W. McClune, Laurence R. Arnold, Stephen W. Parrish, Weissburg and Aronson, Inc., San Francisco, Cal., for respondents.

## OPINION AND ORDER

ORRICK, District Judge.

The petition to compel arbitration ("petition") of Hospital & Health Care Workers, Local 250, SEIU, came on for hearing on June 30, 1988. Petitioner asks the Court to compel arbitration of a dispute over the terms of a collective bargaining agreement (the "Agreement") between the parties. Respondents are Children's Hospital of San Francisco, Marshal Hale Memorial Hospital, Mary's Help Hospital of Seton Medical Center, Mt. Zion Hospital and Medical Center, Presbyterian Hospital of Pacific Medical Center, St. Francis Memorial Hospital, St. Mary's Hospital and Medical Center, and Affiliated Hospitals of San Francisco.

The dispute between the parties is a technical one, demanding a careful scrutiny of the intricacies of the time and form requirements of the collective bargaining agreement. This dispute over technicali-

ties arose from the pressures of sky-rocketing health care costs on the three-year-old Agreement, which imposed on respondents the full cost of their employees' insurance premiums. The parties began collective bargaining to modify the contract in January 1988. They had negotiated over several other provisions, when respondents submitted proposals on March 7, 1988, to impose the cost of a portion of health insurance premiums upon the hospital workers. Respondents claimed these costs were far too high for the hospitals to bear without some contribution from their employees. Petitioner refused to bargain over the proposals on the grounds that they were untimely and improperly made, so that there was no time to respond to them before the end of the collective bargaining period on May 1, 1988. Although the Court cannot rule upon the merits of the parties collective bargaining positions, it is compelled to note the irony of a situation in which even hospitals claim they cannot provide a paid health care plan for their own employees.

## I

The factual and procedural history of this case is technical and detailed. The twists and turns of the collective bargaining period are exhaustively set forth in the papers submitted by the parties and, therefore, the Court will only recount a brief summary of those events. Petitioner contends that respondents failed to comply with both time and form requirements of paragraph 258 of the Agreement in making their proposals to modify the health care provisions. *See* Petition, filed May 16, 1988, Exh. A, ¶ 258. Petitioner filed two grievances on April 5, 1988, in accordance with the grievance and arbitration provisions of the Agreement, complaining of this failure. After several exchanges of letters, petitioner concluded that respondents were not going to acknowledge their failure, and demanded arbitration of the grievances pursuant to the Agreement's terms. Respondents refused to arbitrate the grievances because they contended that the grievances were without merit. They argued that their modification proposals were properly on the bargaining table pursuant

to their timely notice of termination of the Agreement.

Petitioner then filed the petition now before the Court. Respondents oppose the petition both on the grounds that the grievances have no merit and that the arbitration provisions of the Agreement are no longer in effect. They claim that the Agreement terminated on May 1, 1988, before the petition was filed. Therefore, they argue that they have no contractual obligation to arbitrate the grievances.

## II

The Supreme Court has recently reaffirmed the basic principles that the Court must apply to determine whether or not the parties agreed to arbitrate the grievances at issue in this case. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). *AT & T Technologies* set forth four principles that had been decided over twenty-five years ago in the famous *Steelworkers Trilogy: United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). First, *AT & T Technologies* held that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " 475 U.S. at 648, 106 S.Ct. at 1418, *quoting Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. Second, "the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination," unless the parties clearly provide otherwise. 475 U.S. at 649, 106 S.Ct. at 1418, *citing Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53.

Applying these two principles to the language of the Agreement in this case, it

is clear that this Court, and not the arbitrator, has jurisdiction to decide the question of arbitrability. The Agreement confers only limited jurisdiction upon the arbitrator and does not express any agreement to submit questions of arbitrability to the arbitrator. Paragraph 250 of the Agreement provides that all grievances "may, at the request of either party, be submitted to arbitration . . . ," but the only type of disputes that may be grieved are those that concern "the interpretation or application of the terms of this Agreement, including a discharge case." *See* Petition, Exh. A, ¶¶ 246, 249. Paragraph 253 then sets forth the scope of the power of the arbitrator:

> "The Arbitrator shall have no power to add to, to subtract from or to change any of the terms or provisions of this Agreement. His or her jurisdiction shall extend solely to claims of violation of specific written provisions of the Agreement and involve only the interpretation and application of such Agreement. . . . Without limitation upon the foregoing, if either party shall give notice of a desire to modify . . . the arbitrator shall have no power to determine what modifications or changes, if any, should be made in the Agreement or otherwise to decide any question with respect thereto, other than the sufficiency and effect of the notice itself."

This language makes clear that the jurisdiction of the arbitrator is strictly limited and that the question of arbitrability must be decided by this Court by application of the principles of federal labor law to the Agreement.

The third principle set forth in *AT & T Technologies* was that the "court is not to rule on the potential merits of the underlying claims," even if the claims appear to be "frivolous" to the Court. 475 U.S. at 649–50, 106 S.Ct. at 1419, *citing American Manufacturing Co.*, 363 U.S. at 568, 80 S.Ct. at 1341. Finally, where the collective bargaining agreement contains an arbitration clause:

> [T]here is a *presumption* of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage."*

*AT & T Technologies*, 475 U.S. at 650, 106 S.Ct. at 1419, *quoting Warrior & Gulf*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53 (emphasis added). This presumption of arbitrability "recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, 'furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining.' " 475 U.S. at 650, 106 S.Ct. at 1419, quoting *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984); *accord Brotherhood of Teamsters, Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507, 509 (9th Cir.1987) (hereinafter cited as *"Interstate Distributor"*).

■ The application of the third and fourth principles of the *AT & T Technologies* case to the Agreement at hand leads the Court to the conclusion that the grievances filed by petitioner must be arbitrated. The dispute embodied by the grievances would require the Court to examine the language of the termination and modification provisions of the Agreement and apply them to the facts of this case. This determination falls squarely within the terms of paragraphs 246, 249, 250 and 253 of the Agreement, for it would involve the "interpretation or application of the terms of this Agreement." Moreover, the language of paragraph 253 expressly includes disputes over the "sufficiency and effect" of modification notices, and it clearly encompasses similar disputes over termination notices, which are certainly disputes about "specific written provisions of the Agreement." The arbitrator will have to interpret and apply paragraph 258 of the Agreement, relating to the time and form requirements of modification and termination notices.

This conclusion is supported by recent decisions of the United States Court of

Appeals for the Ninth Circuit. In *Interstate Distributors*, that court held that arbitration must be compelled on the issue of whether or not an exchange of letters and notices constituted a termination under the terms of a collective bargaining agreement. 832 F.2d at 510. Although the scope of the arbitration clause in *Interstate Distributors* was broader than the one at hand, the holding of the case is still applicable, because the Ninth Circuit stressed that disputes about termination must be submitted to arbitration where the arbitration clause clearly encompassed "disputes concerning the meaning of the terms and the provisions of the agreement." 832 F.2d at 510.

In this case, the resolution of petitioner's grievances will require the interpretation of the effect of an exchange of notices and letters under the terms of paragraph 258 of the Agreement, which contains the requirements for termination and modification notices. This determination will require an interpretation and application of the terms of the Agreement, clearly an arbitrable dispute under the provisions of paragraphs 246, 249, 250, and 253 of the Agreement. Petitioner's grievances must be arbitrated. Therefore, the *Interstate Distributor* case controls the outcome of this case.

■ Respondents argue that the Agreement has terminated, and have submitted evidence that even petitioner has admitted this. While respondents' argument is difficult to follow, it appears that they argue both that the Agreement was effectively terminated by their January 29, 1988, notice of termination, as admitted by petitioner, and that a bargaining impasse reached in early May terminated the Agreement. Respondents' first argument would require this Court to rule upon the merits of the dispute over the sufficiency and effect of the various notices issued by the parties. The Court is forbidden to make such a ruling under the holding of *AT & T Technologies.* 475 U.S. at 649–50, 106 S.Ct. at 1419. Moreover, even if the Court were to hold that the contract terminated at this point in time, the grievances were filed before the termination date of the contract, and were arbitrable at the time they were

filed. *Interstate Distributors*, 832 F.2d at 509 (Ninth Circuit ordered arbitration of dispute over termination of collective bargaining agreement, even though dispute arose after termination date of contract).

There is recent authority in this Circuit that lends support to respondents' second contention, that this Court has jurisdiction to rule on the factual question of whether or not a bargaining impasse existed. *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236 (9th Cir.1988). However, in this particular case, the Court cannot rule upon the existence of a bargaining impasse without ruling on the merits of the grievances. Petitioner contends that it refused to bargain because it believed respondents' proposals to be improperly made without sufficient time to allow them to prepare a response before the anniversary date. The merits of petitioner's grievances will have to be decided before the Court can determine whether petitioner's failure to bargain created an impasse. Therefore, a ruling on the bargaining impasse issue will have to await the decision of the arbitrator on petitioner's grievances.

### III

Accordingly,

IT IS HEREBY ORDERED that the petition to compel arbitration is granted. Petitioner's grievances, submitted to respondents on April 5, 1988, must be submitted to arbitration in accordance with the procedure set forth in paragraph 250 of the Agreement.