Rod McKINNEY and CF Air Freight Employees, Plaintiffs–Appellants/Cross–Appellees,

v.

EMERY AIR FREIGHT CORPORATION, d/b/a Emery Worldwide, a CF Company, Defendant–Appellee/Cross–Appellant.

Nos. 90–15600, 90–15613.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 11, 1991.

Decided Jan. 23, 1992.

Christopher W. Katzenbach, San Francisco, Cal., for plaintiffs-appellants/cross-appellees.

William J. Emanuel, David J. Hamilton, Morgan, Lewis & Bockius, Los Angeles, Cal., for defendant-appellee/cross-appellant.

Before ALDISERT,* GOODWIN and NOONAN, Circuit Judges.

ALDISERT, Circuit Judge:

Several issues have been presented in these consolidated appeals by former employees of CF Air Freight, Inc. (hereinafter "the McKinney plaintiffs") at No. 90–15600, and by Emery Air Freight Corporation at No. 90–15613, but the question that controls our decision is whether the district

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

court erred by not ordering the parties to arbitrate the question whether a collective bargaining agreement between the McKinney plaintiffs' employer and Local 85 of the Teamsters Union had been terminated.

The issue arises in an action brought by the McKinney plaintiffs against Emery under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), requesting a declaration that the collective bargaining agreement was in full force and effect, and damages for the breach thereof. Largely influenced by the parties' united request that the court meet the issue, rather than an arbitrator, the district court decided that it would determine the vitality of the agreement. It concluded that Emery was bound by an agreement with Teamster Local 85, and entered partial summary judgment for the McKinney plaintiffs on this issue.

The court denied the plaintiffs further relief, holding that because the core item of claimed damages resulted from an alleged loss of their seniority status, the plaintiffs' claims must proceed through the grievance procedures of the agreement before they can be considered by the court. Accordingly, the district court entered summary judgment in favor of Emery on the damages issue. On appeal, the McKinney plaintiffs contend that the court erred in requiring them to exhaust the grievance mechanism; Emery argues that the court erred in concluding that it was bound by the Local 85 agreement.

The district court's jurisdiction was premised on 29 U.S.C. § 185(a). We have appellate jurisdiction under 28 U.S.C. § 1291. The appeals were timely filed under Rule 4(a), F.R.A.P.

## I.

The McKinney plaintiffs offer at least two reasons why they should be excused from pursuing the grievance remedies under the Local 85 agreement: (1) Emery's refusal to recognize the agreement constituted a repudiation of the contractual remedy and (2) Local 85 breached its duty of fair representation. For its part, Emery contends that the Local 85 agreement was abrogated by the ruling of the Regional Director of the National Labor Relations Board that as of April 17, 1989, the date of the consolidation of the work forces, Local 85 ceased to be the sole collective bargaining representative of the former CFAF employees. Since that date, they have been jointly represented by Teamster Locals 70, 85 and 287. *See Emery Air Freight Corp. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 85*, No. 32–UC–252 (N.L.R.B. May 14, 1990).

We asked the parties to brief and argue the question whether the continued existence of the Local 85 collective bargaining agreement should have been referred to arbitration. The agreement contained an arbitration clause covering "[a]ny grievance or controversy" between the parties. We asked the litigants here to consider two recent cases of this court holding that disputes over contract terminations are for arbitrators and not the courts: *Camping Constr. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1338–39 (9th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1684, 114 L.Ed.2d 79 (1991), and *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 509–12 (9th Cir.1987).

After considering the supplemental briefing and hearing oral argument on this issue, and after evaluating the complicated factual scenario, we are persuaded that the question whether the May 15, 1989, written instrument constitutes a binding labor agreement supporting the McKinney plaintiffs' claims is a matter properly determined by an arbitrator rather than by the court. Accordingly, we vacate the judgment of the district court and remand these proceedings with a direction that the district court refer the question of the contract's viability to arbitration.

## II.

We review *de novo* a district court's grant or denial of summary judgment. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether any genuine issues of fact exist and whether the district court correctly applied the relevant substantive law. *Judie v. Hamilton,* 872 F.2d 919, 920 (9th Cir.1989).

### III.

The dispute arose after the merger and consolidation of CFAF and Emery, two shipping companies with a number of terminals in the San Francisco area. The plaintiffs are Rod McKinney, a former CFAF employee currently working for Emery, and CF Air Freight Employees, an organization of dock workers and truck drivers formerly employed by CFAF.

Before the merger, the McKinney plaintiffs worked for CFAF, where they constituted a single bargaining unit represented by Teamster Local 85. Workers in the old Emery company also constituted a single bargaining unit, but they were jointly represented by Teamster Locals 70, 85 and 287.

In early 1989, CFAF employees were working under an extended collective bargaining agreement that was due to expire on March 31, 1989. Negotiations between Local 85 and CFAF had produced a final offer from the company, which the employees had not approved. Meanwhile, Consolidated Freightways, Inc., the parent company of CFAF, purchased all of the outstanding shares of the old Emery company on March 31, 1989. Consolidated Freightways merged its two companies—CFAF and the old Emery—on April 6, 1989, retaining the Emery name as the title of the new company. Realizing that a consolidation of operations was in the works and that their terminal was likely to be closed, the CFAF employees voted to accept the final offer on April 9, 1989, three days after CFAF had ceased to exist.

Emery did indeed plan to close the CFAF terminal. In pursuit of this goal, an interim Change of Operations agreement was signed on April 13, 1989, by Emery and by the local unions on behalf of Emery employees. The agreement designated a Change of Operations Committee and set forth guidelines concerning seniority and workplace assignments that would govern the consolidation of the work forces. Consolidation commenced according to the terms of this agreement.

Local 85, however, continued to assist the former CFAF employees in pursuing a collective bargaining agreement with the successor company. On May 15, 1989, a Local 85 official and Emery's corporate counsel signed an instrument on behalf of "Teamster Local 85" and "CF Air Freight, Inc." Below the Local 85 signatory appears the handwritten notation: "Ratified April 10, 1989." What muddies the factual and legal waters are two critical circumstances. First, although the contract names "CF Air Freight, Inc." as one of the parties, CFAF had ceased corporate existence five weeks before, on April 6, 1989. Second, the Regional Director of the National Labor Relations Board has ruled that as of April 17, 1989, the date of the consolidation of the work forces, Teamster Local 85, the signatory to the instrument, was not the employees' only collective bargaining representative; they were represented jointly by Teamster Locals 70, 85 and 287. *Emery Air Freight Corp.,* No. 32–UC–252 (N.L.R.B. May 14, 1990).

Eberhard G.H. Schmoller, Emery's Vice President and Corporate Counsel, stated in a declaration in support of Emery's motion for summary judgment:

6. The CFAF driver/dockmen voted to accept the offer on April 9, 1989, three days after the merger of the CFAF and Emery corporate entities. They were given the wage and benefit increases retroactive to April 1, 1988. In order to confirm in writing the basis for the wage increase—and especially for the basis for the pension contribution increase—Local 85 asked Emery (CFAF's successor-in-interest) to sign an agreement consisting of the offer CFAF had previously made.... The document was signed by me on behalf of CFAF. I was responsible for making the decision to sign the agreement on behalf of Emery/CFAF. The sole motivation in signing the agree-

ment was to facilitate the payment of retroactive wage and pension increases. Schmoller Declaration at 3–4; Supp.E.R. 15 at 3–4.

On May 16, 1989, the Change of Operations Committee held a formal hearing and set final terms for work force consolidation. A disagreement over seniority was referred to the National Grievance Committee, which resolved the matter on August 10, 1989.

The McKinney plaintiffs assert that the consolidation violated their rights under numerous provisions of the May 15 agreement, and take issue with Emery's statement that it signed the agreement solely to facilitate the payment of retroactive wages and pension increases. They argue that their seniority with CFAF should have counted as seniority with Emery, thus giving them precedence over some Emery employees. Brief for McKinney Plaintiffs at 9–10. They also summarily assert that Emery breached contract provisions concerning vacation pay, use of part-time employees, reductions in benefits and other matters. *Id.* at 29.

The McKinney plaintiffs contend that they presented their grievances to Local 85 and were rebuffed, *id.* at 10–11, and that Emery "expressed [no] meaningful interest in resolving this dispute through the contract grievance procedures." *Id.* at 27. Emery denies that the plaintiffs have exhausted their contractual remedies.

The McKinney plaintiffs filed this lawsuit in July 1989, seeking a declaratory judgment that the collective bargaining agreement remains in effect, as well as damages for Emery's purported breach thereof.

### IV.

We begin the inquiry as to whether the arbitrator or the court should decide the efficacy of the May 15 written agreement by referring to case law of this court. Precepts laid down instruct us to distinguish between a dispute over whether a contract ever existed and a dispute over whether a contract has expired or has been terminated or repudiated. In the former case, the issue is for the court; in the latter, the issue is for the arbitrator if the breadth of the arbitration clause is not in dispute. *Camping Constr. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1340 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1684, 114 L.Ed.2d 79 (1991).

There can be no dispute about the breadth of the arbitration clause here. It is unquestionably broad, covering "[a]ny grievance or controversy affecting the mutual relations of the Employer and the Union." Agreement of May 15, 1989, at 44; ER 15, Exhibit A, at 44. We have said that "[a]n agreement to arbitrate 'any grievance or controversy affecting the mutual relations of the [parties]' ... or any other broad arbitration clause, such as 'any dispute arising out of this Agreement,' ordinarily requires us to hold that the parties have provided for arbitration of disputes regarding termination [of the contract]." *Camping,* 915 F.2d at 1338–39 (quoting *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.,* 832 F.2d 507, 510 n. 2 (9th Cir.1987)).

The question we must resolve is whether a labor agreement ever existed between Local 85 and Emery to support the McKinney plaintiffs' claims.

### V.

We express the precise inquiry for ultimate resolution with care, because the parties' unwillingness to recognize the requirement that the question of contract termination or repudiation be referred to arbitration ignores the limited perimeters of our examination. The McKinney plaintiffs, for example, contend that the issue is controlled by *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), but that case stands primarily for the proposition that " 'whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.' " *Id.* at 547, 84 S.Ct. at 913 (quoting *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318,

1320, 8 L.Ed.2d 462 (1962)). That is precisely the issue we are deciding here.

For its part, Emery anchors its objection to arbitration on the theory that this court recognizes a distinction between agreements "abrogated by operation of federal labor law," which it says require a court's decision, and agreements terminated or abrogated "by operation of the contract's termination clause or general principles of contract law," which are for the arbitrator. First supp. letter brief for Emery at 3 (citing *Camping,* 915 F.2d at 1338). We find no basis for this distinction in either *Camping* or *Interstate Distributor.*

Emery has lifted out of context a statement in *Camping* directed to a footnote in *Interstate Distributor,* 832 F.2d at 511 n. 4, recognizing the courts' authority to decide whether an employer has repudiated a prehire agreement under Section 8(f) of the National Labor Relations Act. *See Camping,* 915 F.2d at 1338. In such cases, "[t]he employer's right to repudiate is created by, and set forth specially in, a federal statute rather than ... in the collective bargaining agreement itself or in a body of common or other law applicable generally to contract matters." *Interstate Distrib.,* 832 F.2d at 511 n. 4.

Emery's attempt to expand this limited exception to encompass the agreement here must fail for three reasons. First, no statute confers on Emery an absolute right to repudiate the May 15 agreement. Second, the agreement is a collective bargaining agreement and not a Section 8(f) prehire agreement. Third, we recognized in *Camping* that the rule requiring the court to decide the issue of repudiation in prehire agreements was superseded by *Deklewa v. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3,* 282 N.L.R.B. 1375 (1987), for all repudiations occurring after February 20, 1987. *Camping,* 915 F.2d at 1337 n. 2, 1338–39. Thus, any post-*Deklewa* repudiations are subject to the *Interstate Distributor* rule that " 'when the collective bargaining agreement contains a customary arbitration clause[,] acts of repudiation and other acts of termination must be submitted to arbi-

tration.' " *Camping,* 915 F.2d at 1338 (quoting *Interstate Distrib.,* 832 F.2d at 511 n. 4).

Because Emery has introduced an inhibiting conception of "federal labor law," it may be well to delineate some fundamental precepts utilized in deciding labor disputes. The foundation is grounded in statutes such as the National Labor Relations Act and the Labor–Management Reporting and Disclosure Act, among others. The labor agreement is the method of implementing our national labor policy, but it is not a run-of-the-mill commercial contract. Professor Archibald Cox has quoted Dean Shulman in this respect:

"[The collective-bargaining agreement] is not the 'typical' offer and acceptance which normally is the basis for classroom or text discussions of contract law. It is not an undertaking to produce a specific result; indeed, it rarely speaks of an ultimate product. It is not made by parties who seek each other out to make a bargain from scratch and then go[ ] [their] own way.... Though cast in an adversary position, both are dependent upon their common enterprise.... They meet in their contract negotiations to fix the terms and conditions of their collaboration in the future."

Cox, *Reflections Upon Labor Arbitration,* 72 Harv.L.Rev. 1482, 1492 (1959) (quoting Address by Dean Schulman, *The Role of Arbitration in the Collective Bargaining Process,* delivered at the Univ. of Cal., Mar. 4, 1949, in *Collective Bargaining and Arbitration* 19, 20–21 (Inst. of Ind. Relations, Univ. of Cal.1949)).

■ "The resulting contact," says Professor Cox, "is essentially an instrument of government, not merely an instrument of exchange." *Id.* To interpret such an agreement and to determine whether a contract has been terminated or abrogated, "[t]he governing criteria are not judge-made principles of the common law but the practices, assumptions, understandings, and aspirations of the going industrial concern." *Id.* at 1500. The Supreme Court has described this as "the industrial common law." In *United Steelworkers of Am.*

*v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), the Court stated: "The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." Commentators have emphasized that "[u]nquestionably, custom and past practice constitute one of the most significant factors in labor-management arbitration." F. Elkouri & E. Elkouri, *How Arbitration Works* 389 (3d ed. 1973); *see also* S. Block, *Customs and Usages as Factors in Arbitration Decisions* 312–13 (1962), *reprinted in* R. Aldisert, *The Judicial Process* 299 (1976).

All of these components—statutes, case decisions, principles of contract law, practices, assumptions, understandings, the common law of the shop and "the industrial common law"—are part of what is known as the federal labor law. Moreover, it is the general understanding, indeed it is the keystone of the national labor policy announced in the *Steelworkers* trilogy,[1] that skilled labor arbitrators, rather than judges, are better positioned and equipped to identify and to apply the common law of the shop.

We are satisfied that previous decisions of this court tell us how to proceed here:

> The court must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator.... [O]nce it is found that a contract did exist at some time, the questions of whether that contract has expired, or has been terminated or repudiated, may well present arbitrable issues, depending on the language of the agreed-upon arbitration clause.

*Camping,* 915 F.2d at 1340; *see Republic of Nicaragua v. Standard Fruit Co.,* 937

F.2d 469, 478 (9th Cir.1991). We now apply these precepts to the facts in this case.

## VI.

■ It is undisputed that Emery is the successor corporation to both CFAF and the old Emery company; that at the beginning of 1989, CFAF employees were working under a labor agreement between Local 85 and CFAF that was due to expire on March 31, 1989; that CFAF had extended a final offer; that the companies were merged on April 6, 1989; that the employees had ratified the CFAF offer by April 10, 1989; and that Local 85 and Emery signed a labor agreement on May 15, 1989. We have Emery's acknowledgement that it was a party to the agreement: "When Local 85 accepted the company's offer by ratification of the membership, a collective bargaining agreement was created between Emery and Local 85." Second supp. letter brief for Emery at 2; *see* Brief for Emery at 15. We also have Schmoller's statement that he signed the May 15 agreement on behalf of Emery to confirm a retroactive pay increase and to implement increased pension contributions, a statement contradicted by the McKinney plaintiffs.

From this we conclude that a labor contract between Local 85 and Emery did exist at one time. *See Presto Casting Co. v. N.L.R.B.,* 708 F.2d 495, 498 (9th Cir.), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983). What remains to be determined is whether the contract existed only for the limited purposes described by Schmoller, and whether the contract remained in effect after the consolidation of the work forces.

We believe that this is a paradigm case to refer to the particular expertise of arbitrators, who will be able to sift through the facts and apply what the Supreme Court has described as "the industrial common law." *Warrior & Gulf Navigation,* 363 U.S. at 581–82, 80 S.Ct. at 1352.

---

**1.** United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S.*

574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

## VII.

In the view we take of this case, we do not meet the substantive issues raised on appeal by the parties. The judgment of the district court is VACATED and the proceedings REMANDED with a direction to refer to arbitration the question whether Emery is bound by a labor agreement covering the subject matter of the McKinney plaintiffs' complaint.