CALLAHAN, Circuit Judge,
dissenting:
My colleagues cite the correct applicable law, but in. my opinion they come to an incorrect factual coneltision. They conclude that the parties “did not manifest their intent to be bound by the Commercial Contract containing the arbitration clause.” Op. at 1212.1, on the other hand, agree with the district court that the parties did initially agree, to be bound by the Commercial Contract. Accordingly, I would affirm the. district court’s order referring the question of whether and when the. Commercial Contract was terminated to arbitration. .
The Commercial Contract, which all admit was the first agreement to be signed, is an 18-page document that details the parties’ agreement and obligations. However, it appears that the parties had misgivings about the Commercial Contract. They were concerned that the Commercial Contract would not conform to California’s Franchise Investment Law and Business and Professions Code, but they also wanted to allow Hector to use the Commercial Contract to obtain a visa to work in the United States.
Their “solution” was a curious second agreement, the Hold Harmless Agreement. This single-page document states that the Commercial Contract “does not have any validity or effectiveness between the parties” and provides that they “will sign a future contract which will regulate their commercial relationship.” But they never signed the envisioned contract. Instead, they proceeded to act as contractually related parties for over a year, from September 23, 2010 until at least December 20, 2011, when Italflavors closed its store in San Diego.
The majority, by treating the Commercial Contract and Hold Harmless Agreement as a single document, concludes that the parties “have not mutually consented to be bound by their agreement, they have not formed a true contract.” Op. at 1212. Based on this factual finding, the majority, applying the applicable law, .determines that it is for the court, not an arbitrator to determine whether a contract ever existed.
I disagree with the majority’s factual premise.[1] The parties first entered into *1215 the Commercial Contract. They mutually agreed to be bound by the Commercial Contract and its broad arbitration clause. They then entered into a separate and distinct Hold Harmless Agreement. They disagree as to the effect of this document. Caffe Vergnano argues that the Hold Harmless Agreement did not really terminate the Commercial Contract, but was intended to'protect it from possibly violating U.S. franchise laws or- misuse of the Commercial Contract by Hector in seeking avisa. [1]
Italflavors, however, argued that the Hold Harmless Agreement terminated the Commercial Contract. For example, Italf-lavors alleges that it was Caffe Vergnano that “wanted to enter into a second agreement cancelling the Sept. 23 Agreement.”[2]
Because the Commercial Contract was entered into before the Hold Harmless Agreement was signed, the district court, properly applying our law, determined that the dispute over whether and .when the Commercial Contract was terminated should be referred to arbitration. See McKinney v. Emery Air Freight Corp., 954 F.2d 590, 593 (9th Cir.1992) (“Precepts laid down instruct us to distinguish between a dispute over whether a contract ever existed and a dispute over whether a contract has expired or has been terminated or repudiated. In the former case, the issue is for the court; in the latter, the issue is for the arbitrator if the breadth of the arbitration clause is not in dispute.”); Camping Constr. Co. v. Dist. Council of Iron Workers, 915 F.2d 1333, 1338 (9th Cir.1990) (holding that the district court “itself ruled on the arbitrability question, and concluded that both the termination issue and the repudiation issue were arbitrable.”).
Finally, I agree with the majority that Italflavors is not “bound by a judicial admission as to the existence of a contract in California court.” Op. at 1213. Italfla-vors’ complaint in the state court asserted “[i]n September 2010, the parties executed at least two commercial contracts, based on Italian law, purporting to create a franchise relationship.” Although this assertion may not be binding, it does reflect that Italflavors knew and accepted that it had signed the Commercial .Contract before the Hold Harmless Agreement was formulated. Thus, the record supports the district court’s factual determination that the parties agreed to contract with a broad arbitration clause, but might thereafter have terminated the Commercial Contract through the Hold Harmless Agreement. The district court thus properly referred the question of whether and- when the Commercial Contract terminated to arbitratioN. I respectfully dissent and would affirm the district court’s order.

. In determining whether an arbitration provision is subject to the Convention, the district court first asked whether. there was “an agreement in writing to arbitrate the dispute.” See Chloe Z Fishing Co., Inc. v. Odyssey Re, Ltd., 109 F.Supp.2d 1236, 1243 (S.D.Cal.2000).. ,.The district court then implicitly found that there was such an.agreement. It held “that the issue of whether the broad arbitration' clause contained in' the Commercial Contract survives after the September 24, 2010 agreement took effect should be submitted to the arbitrator.” “When a district court uses extrinsic evidence to interpret a contract, wé review its findings of fact for clear error.” Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 878 (9th Cir.2009). If the. district court’s factual determination is not adequately explained or supported by the record, we should remand to the district court to make further findings or take further evidence, rather than *1215 decide the contested factual issue. See De-Marco v. United States, 415 U.S. 449, 450 n. 1, 94 S.Ct. 1185, 39 L.Ed.2d 501 (1974) (per curiam) (stating “that factfinding is the basic responsibility of district courts, rather than appellate courts, and that the Court‘of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the District Court.”).

. The assertion that the parties entered into a second agreement is, of course, inconsistent with the position that the two agreements were considered or should be considered one.