NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

DEC 14 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| OPTIMUM PRODUCTIONS, a California corporation; et al., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> HOME BOX OFFICE, a Division of Time Warner Entertainment L.P., a Delaware Limited Partnership; et al., <br><br> Defendants, <br><br> and <br><br> HOME BOX OFFICE, INC., a Delaware corporation, <br><br> Defendant-Appellant. | No.   19-56222 <br><br> D.C. No. 2:19-cv-01862-GW-PJW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted November 19, 2020
Pasadena, California

Before:  PAEZ and VANDYKE, Circuit Judges, and IMMERGUT,** District

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Karin J. Immergut, United States District Judge for the District

Judge.

Home Box Office (HBO) appeals the district court's order compelling arbitration with Optimum Productions and the Estate of Michael Jackson (the Estate).[1] We have jurisdiction under 28 U.S.C. § 1291 and review "[t]he district court's decision to grant or deny a motion to compel arbitration … de novo." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 564 (9th Cir. 2014) (citation omitted).

The "gateway" inquiry in reviewing a motion to compel arbitration requires us to determine "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). When analyzing the arbitration agreement, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (discussing the Arbitration Act, 9 U.S.C. § 2).

---

of Oregon, sitting by designation.

[1] Because the parties are familiar with the facts, we discuss them only as necessary to resolve the issues presented in this appeal.

## I.    A Valid Arbitration Agreement Exists.

The parties do not dispute that the 1992 *Live in Bucharest* contract at issue was a product of mutual consent and included a broad arbitration provision. Attached and incorporated in this agreement were detailed and stringent Confidentiality Provisions explicitly restraining HBO "either during or after HBO's contact" with Jackson from disclosing "any information relating to … [the] personal life of" Jackson.  As part of the Confidentiality Provisions, HBO agreed that it would not "make any disparaging remarks concerning" Jackson.

An arbitration clause can still bind the parties, even if the parties fully performed the contract years ago. *See Nolde Bros. v. Local No. 358, Bakery & Confectionary Workers Union*, 430 U.S. 243, 252 (1977) ("[T]he parties' obligations under their arbitration clause survive[] contract termination when the dispute [is] over an obligation arguably created by the expired agreement.").  HBO does *not* dispute the *existence* of a valid agreement, the included arbitration provision, or the incorporated confidentiality provision, but rather the "continuing validity" of the agreement and the arbitration provision.  Thus, a valid arbitration agreement exists.

## II.    The Arbitration Agreement Covers the Dispute.

The Arbitration provision broadly states that "[a]ny dispute arising out of, in connection with or relating to this Agreement shall be submitted for binding and final arbitration."  "Every court that has construed the phrase 'arising in connection

3

with' in an arbitration clause has interpreted that language broadly," and we "likewise conclude that the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Thus, "[t]o require arbitration, [the Estate's] factual allegations need only 'touch matters' covered by the contract." *Id.* (citation omitted).

The Estate contends that "HBO profited off the Dangerous World Tour by airing a 'documentary' that (falsely) claims that Jackson was abusing children on the same tour, using some of the same footage also used in *Live in Bucharest* to make those allegations." Because the "broad arbitration clause [here] applies to any disputes … arising out of the … agreement or involving its meaning or interpretation," the Estate's claims must be arbitrated. *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 v. Interstate Distrib. Co.*, 832 F.2d 507, 510 n.2 (9th Cir. 1987).

## III. Expiration of the Arbitration Agreement is for the Arbitrator.

HBO contends the agreement is expired, but "where … the agreement contains a broad arbitration clause covering all disputes concerning the meaning of the terms and provisions of the agreement …. [d]isputes over expiration or termination must be submitted to arbitration." *Id.* at 510; *see also Nolde Bros*, 430

U.S. at 252. We have reaffirmed this principle and clearly stated "a dispute over whether a contract has *expired* or has been terminated or repudiated …. *is for the arbitrator* if the breadth of the arbitration clause is not in dispute." *McKinney v. Emery Air Freight Corp*., 954 F.2d 590, 593 (9th Cir. 1992) (emphasis added).[2]

While HBO attempts to use a tautology that a "fully performed [contract] … no longer imposes enforceable obligations," the latter does not follow from the former. The contract contained a broad arbitration clause that covers claims that HBO disparaged Jackson in violation of ongoing confidentiality obligations. We may only identify whether the parties agreed to arbitrate such claims; it is for the arbitrator to decide whether those claims are meritorious.

**AFFIRMED**.

---

[2] Even assuming the merits of the Estate's arguments are as frivolous as HBO claims, "[a] court has no business weighing the merits of the grievance because the agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Henry Schein, Inc. v. Archer & White Sales, Inc*., 139 S. Ct. 524, 529 (2019) (alterations, quotation marks, and citation omitted). We adhere to our "strictly limited [role] … determining arbitrability and enforcing agreements to arbitrate, *leaving the merits of the claim and any defenses to the arbitrator*." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (emphasis added) (citation omitted).