**SAINT MARY HOME, INC.,**
**Plaintiff–Appellant,**

v.

**SERVICE EMPLOYEES INTERNATIONAL UNION, DISTRICT 1199; New England Health Care Employees Union, AFL–CIO, Defendants–Appellees.**

**No. 1348, Docket 96–9353.**

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1997.

Decided May 30, 1997.

Hugh F. Murray, III, Murtha, Cullina, Richter and Pinney, Hartford, CT (Thomas M. Cloherty, of counsel), for Plaintiff–Appellant.

John M. Creane, Law Firm of John M. Creane, Milford, CT (Michael E. Passero, of counsel), for Defendants–Appellees.

Before: WALKER, McLAUGHLIN and CUDAHY,* Circuit Judges.

WALKER, Circuit Judge.

In this appeal from an order of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*) two questions are raised: (1) whether an arbitration award ordering the reinstatement without back pay of an employee of a skilled nursing facility who had been discharged by the facility for possession of marijuana with intent to distribute was beyond the arbitrator's authority under the collective bargaining agreement and, (2) if not, whether the award violates public policy. We answer both questions in the negative and, thus, affirm the district court's denial of the facility's motion to vacate the arbitral award.

## I.  BACKGROUND

On March 18, 1994, Ted Barron, an employee of St. Mary Home, Inc. (the "Home"), had an argument with a fellow employee during work hours over the care of one of the residents. The argument became physical, and Barron's co-worker suffered a sprained wrist. Later that day the police arrested Barron for assault. During a search incident to the arrest, the police found in Barron's possession three-quarters of an ounce of marijuana, several empty plastic bags, plastic tweezers, and a small scale. Local prosecu-

---

* Hon. Richard D. Cudahy of the United States Court of Appeals for the Seventh Circuit sitting by designation.

tors charged Barron with assault in the third degree and possession of marijuana with intent to sell, and soon thereafter the Home discharged him.

Barron's unions, the Service Employees International Union, District 1199, and the New England Health Care Employees Union, AFL–CIO (collectively the "Union"), filed a grievance on his behalf contesting the dismissal under the collective bargaining agreement (the "CBA") between the Union and the Home. After the grievance procedure failed to resolve the dispute, the Union invoked the CBA's binding arbitration provisions, which provide, in relevant part:

1. A grievance ... which has not been resolved ... may, within ten (10) working days after the completion of ... the grievance procedure, be referred for arbitration by the Home or the Union to an arbitrator selected in accordance with the American Arbitration Association...'..

2. The request for arbitration shall set forth the nature of the grievance and shall state what provisions of this Agreement are claimed to be [involved].

\*　　\*　　\*　　\*　　\*　　\*

4. The opinion and award of an arbitrator hereunder shall be in writing and the award shall be final, conclusive and binding upon the Home, the Union and the Employees.

5. The arbitrator shall have jurisdiction only over disputes concerning grievances as defined in Section 1 of Article XXVI [that is, a dispute concerning interpretation, application, performance, termination or breach of the agreement] and he shall have no power or authority to add to, subtract from, or modify in any way the terms of the Agreement.

Joint Appendix at 46–47. The relevant provisions of the CBA pertaining to discharge states simply that the "Home shall have the right to discharge, suspend or discipline any Employee for cause." *Id.* at 40. The CBA, however, does not specifically define grounds that constitute a basis for discharge. In Barron's arbitration, the parties jointly submitted two questions: "Was Ted Barron discharged for just cause? If not, what shall be the remedy?" While the arbitration was pending, the state reduced the charges against Barron to one of simple possession of marijuana and placed him in an accelerated rehabilitation program. Under that program, successful completion of a probationary term results in the dismissal of charges and their expungement from one's record.

On November 23, 1994, after a hearing, the arbitrator reinstated Barron without back pay or lost benefits. The arbitrator found that neither the assault nor the marijuana possession was just cause for discharge. The arbitrator's disposition of the assault charge is not challenged by the Home and is not the subject of this appeal. In finding no just cause for discharge on the ground of marijuana possession, the arbitrator referred to Barron's fourteen years of service "without any major disciplinary problems," Joint Appendix at 80, and to the state's decision to dispose of the criminal charges through the accelerated rehabilitation program. Moreover, in the course of making his findings of fact, the arbitrator specifically found that there was "no evidence that [Barron] was dealing to other employees or, for that matter, to anyone else." *Id.* at 70. The arbitrator did not award back pay or benefits for the period between Barron's discharge and the decision. Thus, effectively, the arbitrator found just cause for a seven month suspension without pay or benefits but not for permanent discharge.

Instead of reinstating Barron within 10 days after the award, as the award provided, the Home moved in district court on December 12, 1994, to vacate the award on two grounds: first, that the award was beyond the authority of the arbitrator under the CBA and, second, that it was contrary to public policy. The Union cross-moved to confirm the award. Almost two years later, on September 24, 1996, the district court granted the Union's motion confirming the arbitration award. The Home still did not reinstate Barron, and on the Union's motion, the district court held a contempt hearing. On October 21, 1996, the district court refused to hold the Home in contempt but ordered Barron's immediate reinstatement. The district court denied the Home's motion

for a stay pending appeal. This appeal followed. On November 19, 1996, we denied the Home's motion for a stay. As of oral argument, Barron had not been reinstated.

## II. DISCUSSION

On appeal, the Home asks us to reverse the district court's confirmation of the arbitrator's reinstatement award on the same two grounds asserted in the district court: (1) that the arbitrator lacked authority under the CBA to make the award, and (2) assuming such authority, that the award violated public policy. We consider each in turn.

### A. *Arbitrator's Authority.*

■ The argument challenging the arbitrator's authority to render the award is easily disposed of. "The decision of an [arbitrator] hearing . . . a dispute receives limited review: 'as long as the arbitrator is even arguably construing or applying the contract and acting within his scope of authority, that a court is convinced he committed error does not suffice to overturn his decision.'" *Harry Hoffman Printing, Inc. v. Graphic Communications Int'l Union, Local 261*, 950 F.2d 95, 98 (2d Cir.1991) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987)). The principal question for the reviewing court is whether the arbitrator's award " 'draws its essence from the collective bargaining agreement,' [since] the arbitrator is not free merely to 'dispense his own brand of industrial justice.'" *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir.1988) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

When parties to an agreement bargain for an arbitrator's decision, that bargain may not be upset by a court simply because it deems the decision incorrect. *See Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990). The court may not substitute its view for that of the arbitrator nor may it even review the award for clear error. *Id.* When an "arbitrator[ ] explain[s his] conclusions . . . in terms that offer even a barely color-

able justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir.1978).

■ Recognizing the sharply limited role of the courts in cases such as this, the Home argues that, in finding the absence of just cause for Barron's discharge, the arbitrator exceeded the scope of his authority. We disagree. The arbitrator acted within his broad authority both under the CBA and as framed by the two questions both sides put before him: "Was Ted Barron discharged for just cause? If not, what shall be the remedy?"

The Home points to passages in the arbitrator's opinion to the effect that Barron's marijuana offense is of a type "so serious that any employee may be properly expected to know without notice that such conduct is offensive and clearly punishable by discharge," and that Barron "was in possession of marijuana with intent to sell, a most serious offense which justifies discharge." Joint Appendix at 78, 80. From these, the Home argues that the arbitrator's decision amounted to an exercise of personal leniency which exceeded the scope of his authority. However, the Home overlooks later passages, in support of the arbitrator's conclusion that, in this instance, Barron's marijuana offense was not "just cause" for discharge. In particular, the arbitrator relied on several factors: (1) Barron's long-term employment at the Home; (2) the absence of any major disciplinary problems in his prior work history; (3) his amenability to rehabilitation; and (4) the fact that the state found him to be a candidate for its accelerated rehabilitation program. *Id.* at 80. For these reasons, the arbitrator concluded that "[t]he Home had just cause to discipline [Barron] but did not have just cause to discharge him." *Id.* at 81.

Since the arbitrator explained his conclusions in terms that offer a "colorable justification for the outcome reached," *Andros Compania Maritima*, 579 F.2d at 704, our inquiry is at an end. Internal inconsistencies in the opinion are not grounds to vacate the

award notwithstanding the Home's plausible argument that the arbitrator's decision was misguided or our own concerns regarding the arbitrator's conclusion. In contracting for arbitration of disputes over whether just cause existed for discharging employees, the parties bargained for a decision by the arbitrator, not necessarily a good one, and that is what they received. *See Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71.

We also will not disturb the arbitrator's conclusion on the ground, argued by the Home, that the arbitrator exceeded the terms of his reference by considering post-discharge events, specifically, Barron's participation in the accelerated rehabilitation program. The arbitrator provided colorable justification for his determination by reference to several pre-discharge mitigating factors even if the terms of the reference excluded consideration of post-discharge factors, a matter which we doubt. *See id.*

Finally, we note that, if they had wanted, the parties could have added a provision in the CBA that one or more crimes would automatically be just cause for dismissal. Instead, they agreed to let the arbitrator decide the question. *See Local 453, Int'l Union of Elec., Radio & Mach. Workers v. Otis Elevator Co.,* 314 F.2d 25, 28 (2d Cir. 1963) (Marshall, J.) (finding that in similarly broad CBA, which failed to define "just cause," that "the parties intended to leave such definition to the arbitrator is made plain ... by the 'plenary grant' of power made to him"). It is not for us to second-guess that choice or to judicially rewrite the agreement because one party now wishes it were different. *See, e.g., Burns Int'l Sec. Servs., Inc. v. International Union, United Plant Guard Workers of Am.,* 47 F.3d 14, 17 (2d Cir.1995).

### B. *Public Policy.*

■ The Home's second challenge to the arbitrator's reinstatement order is that it violates public policy; specifically, "the well defined and dominant public policy against possession, sale and distribution of illegal drugs, a public policy that is even more important in the workplace." Appellant's Brief at 18. We fully recognize the strong public policy toward eradicating the use, pos-

session and sale of illegal drugs; however, we do not agree with the Home that this policy extends so far as to prohibit an arbitrator's award reinstating, after a period of suspension without pay, an employee arrested for an on-the-job drug-related offense. Rather, such a decision having been committed by the parties' collective bargaining agreement to the discretion of the arbitrator, this court, consistent with the principles of *Enterprise Wheel & Car,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), must abide by the parties' choice, whatever our view of the merits of the arbitrator's decision.

■ The question of whether an arbitral award violates public policy is one for the courts. *See W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am.,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983). It is "a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Newsday, Inc. v. Long Island Typographical Union, No. 915,* 915 F.2d 840, 844 (2d Cir.1990). In the context of arbitration contracts, a court's authority to refuse to enforce an arbitral award on public policy grounds is narrowly circumscribed "to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant ... ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373 (internal quotation marks omitted). *See generally Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1209–17 (9th Cir.1989) (*en banc*). This severe limitation is the result of the firmly-established, legislatively-entrenched policy favoring resolution of labor disputes through arbitration, *see Enterprise Wheel & Car,* 363 U.S. at 596, 80 S.Ct. at 1360, a policy that is imperilled by an exception that permits courts to vacate awards on the basis of judicially-formulated versions of public policy, *see American Postal Workers Union v. United States Postal Serv.,* 789 F.2d 1, 8 (D.C.Cir.1986) ("the exception is designed to be narrow so as to limit poten-

tially intrusive judicial review of arbitration awards under the guise of 'public policy' "). Thus, as the Supreme Court indicated in *Misco,* courts may refuse to enforce arbitral awards only in those rare cases when enforcement of the award would be directly at odds with a well defined and dominant public policy resting on clear law and legal precedent. 484 U.S. at 43, 108 S.Ct. at 373.

Under current law, a public policy sufficient to vacate an arbitral award must be ascertained "by reference to ... laws and legal precedents and not from general considerations of supposed public interest." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373 (internal quotation marks omitted); *see also W.R. Grace & Co.,* 461 U.S. at 766, 103 S.Ct. at 2183–84. The Home suggests that a policy favoring permanent discharge of an employee who has engaged in drug-related conduct may be derived from legislative, regulatory, and judicial material, supporting a public policy against drug-related conduct in general, *see, e.g.,* 21 U.S.C. § 841; Conn. Gen.Stat. § 21a–277(b), and in the workplace in particular, *see, e.g.,* the Drug Free Workplace Act of 1988 (codified at 41 U.S.C. §§ 701–707); Executive Order No. 12564, 51 Fed.Reg. 32889 (1986); 10 C.F.R. pt. 707 (Department of Energy); 48 C.F.R. pt. 923.5 (same); 48 C.F.R. § 970.2305 (same); 49 C.F.R. pt. 40 (Department of Transportation); 10 C.F.R. pt. 26; (Nuclear Regulatory Commission). While this material evinces a strong public policy against the use, possession and sale of drugs, it does not support the narrower public policy the Home seeks to invoke: a policy against the reinstatement of a long term employee after a seven-month suspension without pay or benefits following an arrest for possession with intent to sell marijuana. Nowhere does the Home point to an established policy that calls for a fixed disciplinary action of permanent dismissal in all cases where drug related conduct occurs in the workplace. Rather, it appears that the public policy relating to the response for drug related conduct in the workplace is flexible and remedial. One need look no further than Connecticut's disposition of Barron's case by a period of probation followed by expungement of the record of arrest which, presumably, would allow him to seek employment without even disclosing the incident. *See also* 41 U.S.C. § 701(a)(1)(F) (requiring those contracting with agencies to "impos[e] a sanction on, or requir[e] the satisfactory participation in a drug abuse assistance or rehabilitation program by, any employee who is ... *convicted*" of any criminal drug violation). In such circumstances, we cannot find a public policy exception to enforcing the arbitral award in this case.

The Home has cited a host of cases in support of a public policy against drug and alcohol use in safety sensitive positions from which it argues that the arbitrator's reinstatement of Barron, after suspension, in the sensitive nursing home context violates public policy. *See Union Pac. R.R. v. United Transp. Union,* 3 F.3d 255 (8th Cir.1993) (railroad); *Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357 (3d Cir.1993) (shipping); *Gulf Coast Indus. Workers Union v. Exxon Co.,* 991 F.2d 244 (5th Cir.1993) (petro-chemical refinery); *Delta Air Lines, Inc. v. Air Line Pilots Assoc., Int'l,* 861 F.2d 665 (11th Cir.1988) (airline); *Georgia Power Co. v. International Bhd. of Elec. Workers, Local 84,* 707 F.Supp. 531 (N.D.Ga.1989), *aff'd,* 896 F.2d 507 (11th Cir.1990) (utility plant); *cf. Iowa Elec. Light & Power Co. v. Local Union 204 of the Int'l Bhd. of Elec. Workers,* 834 F.2d 1424 (8th Cir.1987) (nuclear power plant). These cases are unavailing for several reasons. In virtually all of them, the public policy violated by the arbitral award was far clearer than that suggested by the Home. *See Union Pac. R.R.,* 3 F.3d at 261–62 (specific federal regulations proscribing the use or possession by employees of drugs and requiring employers to take action upon discovery of drug violations); *Exxon Shipping Co.,* 993 F.2d at 360–62 (same); *Delta Air Lines, Inc.,* 861 F.2d at 668, 671–673 (specific federal regulations and state law proscribing the operation of aircraft while under the influence of alcohol). In several cases, the employees reinstated by the arbitral awards occupied safety-sensitive positions with split-second responsibility for the lives and safety of hundreds. *See Union Pac. R.R.,* 3 F.3d at 256–57 (railroad brakeman); *Exxon Shipping Co.,* 993 F.2d at 358–59 (helmsman of 635 foot oil tanker); *Gulf*

*Coast Indus. Workers Union,* 991 F.2d at 252 (petro-chemical plant worker responsible for supply of electricity, steam, water and nitrogen); *Delta Air Lines, Inc.,* 861 F.2d at 668, 671–673 (pilot-in-command of Boeing–727 aircraft); *Georgia Power Co.,* 707 F.Supp. at 533 (utility worker responsible for ensuring that high pressure equipment did not overheat and valves were in working order). It is telling that the Home has cited neither case law nor regulations prohibiting reinstatement after suspension of those convicted of drug offenses in the health care industry, one of the most heavily regulated industries in the country. It is equally telling that the Home has not argued that Barron's responsibilities entail those akin to a physician or emergency medical technician. In light of the legal landscape in this area and the facts of this case, were we to vacate the arbitral award we would be doing so in contravention of the well established and dominant public policy supporting the validity of arbitral awards based on our view of "general considerations of supposed public interest." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373. Such legislation by judicial fiat does not comport with our judicial function.

Finally, we note that the Home's reliance on *Newsday,* 915 F.2d 840 (2d Cir.1990), is misplaced. In *Newsday,* while we affirmed a district court's vacatur, on public policy grounds, of an arbitrator's reinstatement award in favor of an employee with a history of sexual harassment, the employee was a repeat sexual offender who had been reinstated once before following a prior incident of sexual harassment with a warning by that arbitrator that any further harassing behavior "shall be grounds for immediate discharge." 915 F.2d at 845. Thus, vacating the second arbitrator's reinstatement had the effect of upholding the first arbitral award. Nothing like that situation exists here.

### III. CONCLUSION

Since, the arbitrator's award reinstating the defendant after suspension without pay or benefits did not exceed his authority and did not violate "well defined and dominant" public policy, we affirm the judgment of the district court.