123 F.3d 69
 156 L.R.R.M. (BNA) 2020, 134 Lab.Cas. P 10,062
 ABRAM LANDAU REAL ESTATE and Woodland Realty Co.,
Plaintiffs-Appellants,
v.
Gus BENOVA, in his capacity as President of Local 32B-J,
Service Employees International Union AFL-CIO, and in his
capacity as Trustee of the Building Service 32B-J Pension
Fund, Annuity Fund & Health Fund, Defendant-Appellee.
 No. 1728, Docket 96-9696.
 United States Court of Appeals,
Second Circuit.
 Argued June 23, 1997.
Decided Aug. 15, 1997.
 
 Laurent S. Drogin, The Law Offices of Ira Drogin, New York City, for Plaintiffs-Appellants.
 Paul Galligan, Manning, Raab, Dealy & Sturm, New York City, for Defendant-Appellee.
 Before: MESKILL, McLAUGHLIN, Circuit Judges, and LASKER, District Judge.*
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Plaintiffs appeal from an order entered in the United States District Court for the Southern District of New York (Jones, J.) confirming an arbitration award and denying a motion to vacate the award. The district court held that the dispute between the parties was arbitrable and that the arbitrator did not exceed the scope of his authority. We agree and, therefore, affirm.
 
 BACKGROUND
 
 2
 Abram Landau Real Estate and Woodland Realty Co. ("Landau") own and manage a residential apartment building in Brooklyn, New York. Valentine Diaz was the building's superintendent. He was also a member of Local 32B-J, Service Employees International Union, AFL-CIO (the "Union"). The Union was Diaz's recognized bargaining representative, and the terms and conditions of Diaz's employment were governed by a collective bargaining agreement between the Union and Landau.
 
 
 3
 The collective bargaining agreement (the "Agreement") contained a broad arbitration clause providing that "[a] Contract Arbitrator shall have the power to decide all differences arising between the parties to this agreement as to interpretation, application or performance of any part of this agreement...." The Agreement stated that it would expire on April 20, 1994, but it also contained an "evergreen clause," providing that "upon the expiration date of this agreement ... this agreement shall thereafter continue in full force and effect for an extended period until a successor agreement shall have been executed. During the extended period, all terms and conditions hereof shall be in effect...."
 
 
 4
 In February 1994, about two months before the Agreement was to expire, the Union served a notice, in accordance with the Agreement, on the Federal Mediation and Conciliation Service indicating its intention to terminate the Agreement upon its expiration date and to seek negotiation of a new agreement. The termination date of the Agreement passed, and no new agreement was ever signed by the parties.
 
 
 5
 On June 22, 1994, about two months after the expiration, Landau warned Valentine Diaz that it was dissatisfied with his work performance. On August 8, 1994, Landau discharged Diaz. The Union then served a demand for arbitration upon Landau, seeking to arbitrate Diaz's discharge under the arbitration clause contained in the now-expired Agreement.
 
 
 6
 The Union contended that Diaz's firing violated the Agreement, which provided that a superintendent "shall not be discharged ... except for justifiable cause." In response, Landau commenced an action in the United States District Court for the Southern District of New York (Leisure, J.) seeking to enjoin the arbitration on the ground that the Agreement had expired and therefore, the controversy was no longer arbitrable. The Union replied that Diaz's discharge was arbitrable because the "evergreen clause" extended the life of the Agreement, including its arbitration clause. Landau contended that the "evergreen clause" was invalid, because it violated federal labor law and public policies against perpetual agreements and was also unconscionable. The Union maintained that it was for the arbitrator, not the court, to determine whether the "evergreen clause" was valid, while Landau asserted that the question was one for the court.
 
 
 7
 The district court agreed with the Union and dismissed Landau's complaint, finding that the arbitrator should determine whether the "evergreen clause" was valid. The arbitrator eventually determined that: (1) the "evergreen clause" was valid and therefore, renewed the terms of the Agreement; and (2) Diaz's discharge violated the terms of the Agreement.
 
 
 8
 Upon receipt of the award, Landau commenced another action in the United States District Court for the Southern District of New York (Jones, J.) seeking to vacate the award, and the Union cross-moved to confirm the award. The district court again rejected Landau's arguments and confirmed the award.
 
 
 9
 Landau now appeals, arguing that the district court erred when it concluded that the arbitrator should decide the validity of the "evergreen clause." Alternatively, Landau argues that the arbitrator exceeded the scope of his authority by finding that Landau lacked "justifiable cause" to dismiss Diaz.
 
 DISCUSSION
 
 10
 A. Validity of the "Evergreen Clause"
 
 
 11
 This Court reviews de novo a final district court order compelling arbitration. See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 132 & n. 2 (2d Cir.1996); Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 19 (2d Cir.1995).
 
 
 12
 Landau and the Union agree on two things: (1) the collective bargaining agreement was valid before April 20, 1994 and (2) the propriety of Diaz's termination would have been a proper subject for arbitration under the Agreement before that date. The dispute, therefore, narrows to whether the Agreement expired on April 20, 1994 or continued in effect as a result of the Agreement's "evergreen clause."
 
 
 13
 Landau maintains that whether the Agreement expired or continued under the "evergreen clause" was ultimately a question of the arbitrability of Diaz's termination, and questions of arbitrability are for the court, absent a clear and unmistakable grant of jurisdiction to the arbitrator by the parties. In Landau's view, the arbitration clause in the Agreement is not sufficiently specific to grant the arbitrator jurisdiction over the arbitrability question. Landau asserts that this result is mandated by the Supreme Court's recent decision in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). The Union, on the other hand, contends that the question whether the Agreement expired should be decided by the arbitrator because the broad arbitration clause contained in the agreement is sufficient evidence of the parties' intent to submit that issue to arbitration.
 
 
 14
 Problems of arbitrability usually arise in two contexts. First, and most commonly, this question arises when the issue is whether an arbitration clause in an existing collective bargaining agreement covers a particular dispute between the parties. See Brotherhood of Teamsters and Auto Truck Drivers Local #70 v. Interstate Distrib. Co., 832 F.2d 507, 509 (9th Cir.1987). In these cases, "it is almost always the court which decides whether the arbitration agreement applies to the particular dispute. In doing so, however, the court resolves all doubtful questions in favor of coverage under the arbitration agreement." Id.
 
 
 15
 The second type of arbitrability question deals, not with the scope of the arbitration clause, but with whether there is even a valid agreement to arbitrate in effect at a particular time. See id. at 510. This question usually arises in one of two factual scenarios: (1) whether the parties ever entered into an arbitration agreement at all, and (2) whether an arbitration agreement has expired or been terminated. See id. When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator. See id.; First Options, 514 U.S. at 943, 115 S.Ct. at 1924; AT & T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Under these circumstances, any silence or ambiguity about whether such a question is arbitrable reverses the usual presumption that issues should be resolved in favor of arbitration. See Brotherhood of Teamsters, 832 F.2d at 510; First Options, 514 U.S. at 943, 115 S.Ct. at 1924; AT & T Techs., 475 U.S. at 649, 106 S.Ct. at 1418.
 
 
 16
 The question whether an otherwise valid collective bargaining agreement has expired or has been terminated is different. In these situations, the parties' dispute is not really over what an arbitration clause provides; rather, it is a dispute over the interpretation of other clauses of the collective bargaining agreement, e.g., termination clauses, or in Landau's case an "evergreen clause." See Brotherhood of Teamsters, 832 F.2d at 510; Rochdale Village, Inc. v. Public Serv. Employees Union, 605 F.2d 1290, 1294 (2d Cir.1979). In determining whether an arbitrator or a court gets to interpret a termination clause or "evergreen clause," the dispositive question is whether the parties have agreed that an arbitrator should decide that question. See Brotherhood of Teamsters, 832 F.2d at 510; Rochdale, 605 F.2d at 1296. Where the agreement contains a sweeping arbitration clause covering all disputes involving the meaning of terms and provisions of the agreement and where the arbitration clause does not expressly exclude disputes over the termination provision or the "evergreen" clause, disputes over these matters should be submitted to arbitration. See Brotherhood of Teamsters, 832 F.2d at 510; Rochdale, 605 F.2d at 1294.
 
 
 17
 Some courts have questioned whether disputes relating to expiration or termination of an agreement should even be considered questions of arbitrability, arguing that they are really disputes over the interpretation of the agreement and should go to the arbitrator. See National Union, 88 F.3d at 135. Cf. Brotherhood of Teamsters, 832 F.2d at 510 (finding dispute over termination of agreement not one of arbitrability). If disputes concerning expiration or termination of an agreement are not issues of arbitrability, then First Options does not apply and, under a broad arbitration agreement, these disputes are properly sent to the arbitrator. For purposes of this opinion, however, we will give Landau the benefit of the doubt and will assume that disputes of expiration and termination are questions of arbitrability.
 
 
 18
 Landau argues that the law laid out in Brotherhood of Teamsters and Rochdale has been reversed by the Supreme Court's decision in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). First Options involved two appellants who were being forced to arbitrate a personal grievance pursuant to an arbitration clause they had signed only in their representative capacities as owners of a company. They argued that no valid arbitration agreement existed as to their individual rights and liabilities. The Supreme Court held that whether the appellants were bound by the arbitration agreement was a question of arbitrability that should be decided by the courts, absent clear and unmistakable evidence of an agreement between the parties to submit the question to arbitration. See First Options, 514 U.S. at 943, 115 S.Ct. at 1924. The Court held that a general and broad arbitration clause was not enough to satisfy the clear and unmistakable evidence requirement. See id.
 
 
 19
 Landau would now extend First Options to all questions of arbitrability, including whether an otherwise valid collective bargaining agreement has expired or been terminated. This reading of First Options would require courts to decide all issues of arbitrability, absent clear and unmistakable evidence that the parties agreed to submit such a question to arbitration. In short, a general arbitration clause covering all issues of interpretation would no longer be regarded as sufficiently clear and unmistakable, absent precise language that issues of arbitrability should be arbitrated. We do not read First Options so expansively.
 
 
 20
 We read First Options as a clarification of the type of evidence needed to submit to arbitration a dispute regarding whether parties ever entered into a valid arbitration agreement at all. The appellants in First Options argued that they were not bound by the arbitration clause because they never signed the agreement as individuals. The Court noted that because the question whether parties agreed to submit to arbitration is a question of basic contract law, it would be unfair to submit that very question to arbitration, absent a clear expression that the parties intended this result. See id. First Options acknowledged that other questions of arbitrability would not require such a high evidentiary standard in order to subject them to arbitration. See id. at 1924. The Court reaffirmed that when parties disagree whether a particular dispute falls within the scope of an otherwise valid arbitration agreement, the presumption is in favor of arbitration. See id. The Court stated that the difference in evidentiary standards is understandable because "the [scope of arbitration question] arises when the parties have a contract that provides for arbitration of some issues. In such circumstances, the parties likely gave at least some thought to the scope of arbitration and given the law's permissive policies with respect to arbitration, one can understand why the law would insist upon clarity before concluding that the parties did not want to arbitrate a related matter." Id. (internal citations omitted).
 
 
 21
 Landau's case falls outside First Options' holding and lands squarely within the scope of this Circuit's existing precedent. See generally National Union, 88 F.3d 129; Rochdale, 605 F.2d 1290. Unlike First Options, Landau and the Union do not dispute that they were both parties to a valid collective bargaining agreement before April 20, 1994 and that the termination of Valentine Diaz would have been a proper subject for arbitration under the agreement between the parties. The only dispute between the parties is whether the "evergreen clause" prolonged the life of the agreement. Whether this question is one for the court or the arbitrator is determined by the agreement between the parties. See, e.g., Rochdale, 605 F.2d at 1294. Landau and the Union's Agreement contained a broad arbitration clause submitting to arbitration all disputes between the parties involving the interpretation of any provision of the Agreement. This provision surely covers a dispute involving the validity of the "evergreen clause" and, therefore, is a proper subject for arbitration.
 
 
 22
 This case does not raise the same concerns that led to the First Options holding. To the contrary, this case arises in a scenario where the parties had a valid arbitration agreement and, in the language of First Options, "gave at least some thought to the scope of arbitration." First Options, 514 U.S. at 943, 115 S.Ct. at 1924.
 
 
 23
 It is noteworthy that the Ninth Circuit recently held that First Options is limited to the commercial context and does not apply to labor disputes. See United Brotherhood of Carpenters v. Desert Palace Inc., 94 F.3d 1308 (9th Cir.1996); Pacesetter Constr. Co. v. Carpenters 46 N. Cal. Counties Conference Bd., 116 F.3d 436 (9th Cir.1997). The Ninth Circuit recognized that "there is no strong federal policy favoring arbitration of commercial disputes, [while] ... there is a strong federal policy favoring arbitration of labor disputes ..." United Brotherhood, 94 F.3d at 1311. The Supreme Court has also recognized that there is a strong presumption in favor of arbitrability in the labor context. See AT & T Techns., 475 U.S. at 650, 106 S.Ct. at 1419. We need not go as far as the Ninth Circuit, because even if First Options were extended to the labor context it would not apply to arbitrability questions involving the termination or expiration of a collective bargaining agreement.
 
 B. Scope of the Arbitrator's Authority
 
 24
 Landau argues alternatively that even if the "evergreen clause" is valid, and Landau was obligated to arbitrate, the arbitrator exceeded the scope of his authority by: (1) failing to apply the "justifiable cause" standard imposed by the Agreement and substituting his own "fair and legitimate reason" standard in its place; and, (2) unilaterally inserting a "progressive discipline" requirement into the Agreement. We find Landau's arguments to be meritless.
 
 
 25
 The scope of authority of arbitrators "generally depends on the intention of the parties to an arbitration, and is determined by the agreement...." Local 1199, Hospital and Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir.1992). "If it is clear that an arbitrator has exceeded his authority, the award cannot stand." Id. However, as long as the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority" an arbitrator's decision should not be vacated on the ground that the arbitrator exceeded the scope of his authority. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Even if a court is convinced the arbitrator's decision is incorrect, the decision should not be vacated so long as the arbitrator did not exceed the scope of his authority. See Leed Architectural Products., Inc. v. United Steelworkers of Am. Local 6674, 916 F.2d 63, 65 (2d Cir.1990).
 
 
 26
 Landau argues that the arbitrator exceeded the scope of his authority when he determined that Diaz was not terminated for a "fair and legitimate reason." Landau asserts that this constitutes a different test from the "justifiable cause" standard set out in the collective bargaining agreement and therefore, exceeds the scope of the arbitrator's authority. We disagree.
 
 
 27
 While the arbitrator's decision used the term "fair and legitimate reason," Landau fails to recognize that he also used the term "justifiable cause." The arbitrator is free to use terms synonymous with "justifiable cause" when it is clear from his decision he is applying the proper standard. Landau points to no convincing evidence that the arbitrator used any standard other than "justifiable cause."
 
 
 28
 Landau also argues that it was beyond the scope of the arbitrator's authority to consider Diaz's failure to receive progressive discipline in determining that Diaz was not terminated for "justifiable cause." This Court rejected a similar argument in St. Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199, et al, 116 F.3d 41(2d Cir. 1997), where we held that an employee's failure to incur discipline in the past or to receive a lesser punishment can be considered by an arbitrator in determining whether an employee was dismissed for just cause. See id. at 42. Because the arbitrator explained his conclusions in terms that offer a "colorable justification for the outcome reached," our inquiry should end. See id.
 
 CONCLUSION
 
 29
 We have considered all of Landau's additional arguments and find them to be without merit. The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Morris E. Lasker of the United States District Court for the Southern District of New York, sitting by designation