**INTERNATIONAL ASSOCIATION OF BRIDGE, Structural, and Ornamental Iron Workers, Local Union No. 44, and International Association of Bridge, Structural, and Ornamental Iron Workers, Local Union No. 290, Plaintiffs–Appellants,**

v.

**J & N STEEL AND ERECTION COMPANY, INC., Defendant–Appellee.**

No. 99–4075.

United States Court of Appeals, Sixth Circuit.

April 13, 2001.

Before DAUGHTREY and CLAY, Circuit Judges, and COHN, Senior District Judge.*

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

## I.

COHN, Senior District Judge.

This is a labor case on appeal from a decision by a magistrate judge. Plaintiffs are: International Association of Bridge, Structural, and Ornamental Iron Workers, Local Union No. 44 (Local 44),[1] International Association of Bridge, Structural and Ornamental Iron Workers, Local Union No. 290 (Local 290)[2] (collectively, the Unions). Defendant is J & N Steel and Erection Company, Inc. (J & N Steel). The Unions filed suit against J & N Steel to compel arbitration of its claim that J & N Steel employed non-union labor and was therefore in violation of the parties' agreements. J & N Steel argued that it had no existing contractual relationship with the Unions. The parties filed cross motions for summary judgment. The magistrate judge granted J & N Steel's motion, finding that no contract existed between the parties. For the reasons that follow, the magistrate judge's decision will be affirmed.

## II.

### A.

J & N Steel is engaged in the business of steel erection in the construction industry. J & N Steel began operating in 1975 and employed union labor. In order to employ union labor, J & N Steel was required to enter into collective bargaining agreements (CBAs) with the Unions.[3] In the construction industry, these CBAs are known as pre-hire agreements. The pre-hire agreements are negotiated between the Unions and industry-wide, multi-employer associations. The multi-employer

association that negotiates with Local 44 is the Cincinnati Area Steel Erectors and Riggers Association (the Employer Association). The multi-employer association that negotiates with Local 290 is the Associate General Contractors (AGC).

While there is no evidence that J & N was a member of either multi-employer association, it is clear that J & N signed pre-hire agreements presented by the Unions that were negotiated between the Unions and both the Employer Association and AGC. It is also clear that J & N Steel was required to enter into the pre-hire agreements as a condition of hiring union labor. In fact, the record reveals that the Unions send the pre-hire agreements to all active contractors in the area, regardless of whether the employer is a member of the multi-employer association.

### B.

The last signed pre-hire agreement between Local 44 and J & N Steel was for the term June 1, 1985 through June 1, 1986. The pre-hire agreement contained the following provision regarding termination and renewal, i.e., an "evergreen clause:"

Duration and Termination: This Agreement shall become effective on the 1st day of June, 1985, and remain in full force and effect except as otherwise provided herein, until the 1st day of June, 1986, and shall automatically renew itself from year to year thereafter unless written notice to terminate or amend the Agreement is given by either party not less than one hundred twenty (120) days prior to the expiration date or any renewal thereof.

---

1. Local 44 represents union ironworkers in the Cincinnati, Ohio area.

2. Local 290 represents union ironworkers in the Dayton, Ohio area.

3. The record does not reveal the number of pre-hire agreements that existed between the parties.

. . . .

(JA at p. 53).

The pre-hire agreement also contained a broad arbitration clause, providing that "[a]ny dispute as to the proper interpretation of this Agreement shall be ... referred to a Board of Arbitration ... The Board of Arbitration shall have jurisdiction over all questions involving the interpretations and application of any section of this agreement." (JA at p. 49–50).

On January 17, 1986, Local 44 sent a letter to the Employer Association indicating its desire to amend and renew the pre-hire agreement.[4]

On September 26, 1986, Local 44 sent J & N Steel a letter indicating that a new pre-hire agreement had been reached which would expire on May 31, 1987. The letter stated:

> Enclosed herewith find a copy of recently negotiated agreement between Iron Workers Local No. 44 and Steel Erectors, Fabricators and Riggers Association. Terms and conditions of the expired agreement were extended thru May 31, 1987 with the changes referred to.
>
> New agreements will be forwarded when they are returned from the printer.

(JA at p. 114). J & N Steel did not sign the new pre-hire agreement, nor did it give written notice of its intention to terminate the pre-hire agreement of June 1, 1985 to June 1, 1986.

On November 10, 1986, Local 44 sent J & N Steel a letter indicating that it had not received a signed copy of the new pre-hire agreement. The letter stated in part:

> On October 20, 1986 two copies of the new agreement between Iron Workers Local # 44 and the Steel Erectors, Fa-

bricators and Riggers were mailed to our office.

. . . .

> As of this date we have not received the copy stamped "sign and return." If you are employing, or expect to employ members of this Local Union, you must be signatory to the local collective bargaining agreement or an International Agreement.

. . . .

(JA at p. 115).

## C.

The last signed pre-hire agreement between Local 290 and J & N Steel was for the term May 1, 1981 through April 20, 1984. The pre-hire agreement contained the following "evergreen clause" regarding termination and renewal:

> The Agreement, with any amendments thereof made as provided for therein shall remain in full force and effect until midnight April 30, 1984 and, unless written notice be given by either party to the other at least four (4) months prior to such date of a desire for change therein or to terminate the same, it shall continue in effect for an additional year thereafter. In the same manner, this Agreement with any amendments thereof shall remain in effect from year to year thereafter, subject to termination at the expiration of any such contract year upon notice in writing given by either party to the other at least four (4) months prior to the expiration of such contract year.

(JA at p. 41).

The agreement also contained an arbitration clause, providing "[a]ny dispute as to the proper interpretation of this agreement shall be ... referred to arbitration at

---

**4.** This document is not part of the record.

the election of either party ... The Arbitrator shall have jurisdiction over all questions involving the interpretation and application of any section of this Agreement." (JA at p. 41).

Local 290 also gave timely written notice to AGC of its intent to negotiate a new pre-hire agreement and to have the present agreement extended during that time.[5] A new pre-hire agreement was reached between the AGC and the Local 290 in November 1985. Local 290 sent a copy of the new pre-hire agreement to J & N Steel for signature. J & N Steel did not sign the new pre-hire agreement, nor did it give notice of termination of the pre-hire agreement. J & N Steel explains that at the time the new pre-hire agreement was sent, J & N Steel had not engaged in construction in Local 290's jurisdiction for over six months.

### D.

In late 1986, J & N Steel ceased doing construction work, and completed all remaining construction operations in December of 1986. Over six years later, in 1993, J & N Steel again began to engage in construction work. It did not employ union labor.

### E.

### 1.

Approximately three years after J & N Steel began operations, on November 5, 1996, Local 44 and Local 290 wrote separately to J & N Steel stating that the Unions believed J & N Steel was violating several provisions of the "Collective Bargaining Agreement" between the Unions and J & N Steel, but did not indicate the exact agreement they each referred to in their letters. The letters stated they served as grievances against J & N Steel, and were essentially aimed at J & N Steel's status as a non-union contractor. The letters also informed J & N Steel that the Unions were notifying their respective multi-employer association that a board of arbitration be convened for the purpose of hearing and deciding the grievances.

### 2.

When J & N Steel refused to arbitrate the Unions' grievances, the Unions filed suit in federal district court seeking an order to compel arbitration. J & N Steel sought an order declaring that no contractual relationship existed between the parties. The parties filed cross motions for summary judgment, which were referred to a magistrate judge for final disposition. The magistrate judge granted J & N Steel's motion and relied on principles of contract law to find that the parties' conduct (particularly that of the Unions) indicated that no present contractual relationship exited between the parties. The Unions appealed.

### III.

We review a grant of summary judgment *de novo. Wathen v. General Electric Co.*, 115 F.3d 400, 403 (6th Cir.1997). Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**5.** This document, identified in the magistrate judge's opinion as Exhibit G to the deposition of George Kratzer, is also not a part of the record.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a fact finder or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

## IV.

### A.

On appeal, the Unions argue that the magistrate judge erred by refusing to order J & N Steel to arbitrate because (1) the presumption of arbitrability requires an order compelling arbitration, (2) the defense of contract termination is for the labor arbitrator to decide, not the court; and (3) even if the court could determine the question of contract termination, the contracts here did not terminate under Sixth Circuit law.

J & N Steel argues that the presumption of arbitrability does not apply to the facts of this case and that the magistrate judge properly determined that the pre-hire agreements at issue had expired.

### B.

#### 1.

It is well established that a party is not obligated to arbitrate a labor dispute unless it has contractually agreed to do so. *Litton Financial Printing v. N.L.R.B.*, 501 U.S. 190, 200, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d

1409 (1960). "[W]hether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract between the parties." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

It is equally clear that where, as here, an agreement contains an arbitration clause, "there is a presumption of arbitrability." *AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). This presumption can be overcome only if " 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* (quoting *United Steelworkers*, 363 U.S. at 58–83, 80 S.Ct. 961). A court does not weigh the merits of a grievance or determine the rights of parties under a collective bargaining agreement. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. 1415. Our "role is limited to deciding if 'the party seeking arbitration is making a claim which on its face is governed by the contract.' " *General Drivers, Salesmen and Warehousmen's Local Union No. 984 v. Malone & Hyde, Inc.*, 23 F.3d 1039, 1043 (6th Cir.1994)(quoting *United Steelworkers*, 363 U.S. at 564, 80 S.Ct. 961).

#### 2.

When presented with an issue of arbitrability, the court generally faces two separate scenarios. In one instance, the court must determine whether the collective bargaining agreement covers the dispute at issue. This is a matter for the court to decide and requires an examination of the scope of the arbitration clause itself. *United Steelworkers*, 363 U.S. at 568, 80 S.Ct. 961. The second instance concerns

whether there is a valid agreement to arbitrate. This may occur if a party argues (1) that they never entered into an agreement to arbitrate at all, or (2) that the arbitration agreement has expired or terminated. *See Abram Landau Real Estate v. Benova*, 123 F.3d 69, 72 (2d Cir.1997). The court decides whether the parties ever entered into an agreement to arbitrate. *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. 1415 ("[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.") (citations omitted); *see also First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). However, where the dispute turns not on whether the parties ever agreed to arbitrate, but rather whether an agreement to arbitrate has expired or terminated, the question of termination is for the arbitrator. *See Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, 832 F.2d 507 (9th Cir.1987); *Abram Landau, supra; Teamsters Union Local No. 20 v. Georgia–Pacific Corp.*, No. 98–4016, 2000 WL 712356, 215 F.3d 1327 (6th Cir. May 22, 2000)(unpublished). The reason an arbitrator, not the court, should decide whether an arbitration agreement has expired or terminated is because resolution of the issue involves examining and interpreting the termination provisions of the agreement. As the Court of Appeals for Second Circuit explained:

> The question whether an otherwise valid collective bargaining agreement has expired or has been terminated is different. In these situations, the parties' dispute is not really over what an arbitration clause provides; rather, it is a dispute over the interpretation of the collective bargaining agreement, e.g. ter-

mination clauses, or in Landau's case an "evergreen clause."

*Abram Landau*, 123 F.3d at 73.

### 3.

Here, at first blush, it would appear that we are presented with the question of whether the arbitration clause contained in the signed pre-hire agreements terminated, which, as indicated above, would require examination of the "evergreen clauses" and reference to an arbitrator. However, because the undisputed record shows that the Unions, by their express conduct, treated the signed pre-hire agreements with J & N Steel as no longer in effect, we are not presented with this question. Both Unions sent copies of *new* pre-hire agreements negotiated with the multi-employer associations for J & N Steel's expected signature precisely because the signed pre-hire agreements were no longer in existence. Moreover, the Unions indicated that if J & N Steel did not sign the new pre-hire agreements, it would not be allowed to employ Union members.

The Unions, relying on *Trustees of B.A.C. Local 32 v. Fantin Enterprises, Inc.*, 163 F.3d 965 (6th Cir.1998), argue that because J & N Steel is not a member of the multi-employer association, the agreements with the multi-employer associations are separate from the agreements with J & N Steel and are therefore irrelevant for purposes of determining the relationship between the parties. In *Fantin*, an ERISA case involving unpaid benefit contributions, the employer argued that a new agreement reached with a multi-employer association, which the employer did not sign or become a party to, constituted written notice of the unions' intent to terminate or modify the signed agreement, per the "evergreen clause" in the agreement between the employer and the union.

We rejected this argument, stating "there is no authority—which supports the proposition that a later agreement to which the relevant party is not implicated, will act as notice of termination to an earlier contract entered into by that entity." 163 F.3d at 969.

This case is distinguishable from *Fantin.* First, *Fantin* is an ERISA case; it did not involve a question of arbitrability. Moreover, although J & N Steel was not a party to the new pre-hire agreements reached by the Unions and the multi-employer associations, the Unions, as was their practice, specifically sent the new pre-hire agreements to J & N Steel for its signature. As such, the Unions proceeded as if the new pre-hire agreements were with J & N Steel directly. Indeed, the undisputed evidence also shows that the Unions sent the pre-hire agreements to all active contractors for signature, regardless of whether they are a member of the multi-employer association. It is also clear that the Unions expected that J & N Steel would, as it done before, sign and be bound by any new agreements reached with the multi-employer associations. Thus, unlike *Fantin,* the Unions' conduct here unequivocally shows that J & N Steel was implicated in the new agreements reached with the multi-employer associations, and to that extent, the Unions' conduct indicated that the signed pre-hire agreements were no longer in effect.

From what is before us, there is no genuine issue of material fact that the pre-hire agreements between the parties had long expired. While the Unions argue that this case presents an issue of contract termination, the Unions' bald assertion that termination is an issue is insufficient to make it so. Where the case is presented on summary judgment, it is axiomatic that there be some evidence to create a genuine issue of material fact that termi-

nation is an issue. If so, then the issue of termination should be referred to an arbitrator. Because the facts here, however, undisputedly show that the signed pre-hire agreements were no longer in effect, this is not a case requiring an examination or interpretation of the "evergreen clauses" in the pre-hire agreements. We also do not have to examine whether the parties gave proper notice of termination. Here, the parties, particularly the Unions, treated the pre-hire agreements as expired. As such, there is no basis to refer the question of termination to arbitration.

4.

■ Having determined that the pre-hire agreements expired, the question then becomes whether the parties' post-expiration dispute remains arbitrable. Resolution of this issue is controlled by the Supreme Court's holding in *Litton, supra.* In *Litton,* the Supreme Court was presented with the question of whether a layoff dispute was arbitrable. The employer laid off 10 employees over a year after the CBA had expired. The union filed grievances on behalf of the laid off employees and sought arbitration of the grievances. The Supreme Court articulated the following test for determining whether grievances filed after a CBA expired are subject to arbitration:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Litton,* 501 U.S. at 205–06, 111 S.Ct. 2215.

Applying that test, the Supreme Court held that the "right" being asserted by the

grievances—the provision in the CBA that provided for layoffs by "seniority" if other things such as aptitude and ability are equal"—did not survive expiration of the CBA. The Supreme Court explained:

> The important point is that factors such as aptitude and ability do not remain constant, but change over time. They cannot be said to vest or accrue or be understood as a form of deferred compensation. Specific aptitudes and abilities can either improve or atrophy. And the importance of any particular skill in this equation varies with the requirements of the employers' business at any given time. Aptitude and ability cannot be measured on some universal scale, but only by matching an employee to the requirements of an employer's business at that time. We cannot infer an intent on the part of the contracting parties to freeze any particular order of layoff or vest any contractual right as of the Agreement's [CBA] expiration.

*Id.* at 210, 111 S.Ct. 2215.

■ Here, in their letters/grievances to J & N Steel, the Unions cited numerous provisions of the pre-hire agreements that they claimed J & N Steel was violating. These provisions are the grounds for the Unions' grievances which they seek to arbitrate. Specifically, Local 44 claimed that J & N Steel violated the following:

1. Article 3–regarding union security
2. Article 6—regarding bond
3. Article 7—regarding letters
4. Article 11—regarding wage rates
5. Article 13—regarding welfare plan
6. Article 14—regarding pension plan
7. Article 15—regarding an apprenticeship training fund
8. Article 16—regarding a construction advancement program
9. Article 17—regarding an Institute for Iron Working Industry fund
10. Article 19—regarding vacation plan
11. Article 28—regarding foremen
12. Article 34—regarding a job steward

Similarly, Local 240 claimed that J & N Steel violated the following:

1. Article V—regarding subcontracting
2. Article VI—regarding union security
3. Article VIII—regarding letters
4. Article XI—regarding referrals
5. Article XIV—regarding wages
6. Article XVI—regarding working conditions
7. Article XIX—regarding foremen
8. Article XXI—regarding a job steward
9. Article XXII—regarding welfare plan
10. Article XXII—regarding pension plan
11. Article XXIV—regarding vacation savings plan
12. Article XXV—regarding a bond
13. Article XXVI—regarding a participation agreement
14. Article XXX—regarding arbitration

A close review of the various provisions reveals that none of them survive expiration of the pre-hire agreements under the *Litton* test. All of the provisions relate to J & N Steel's general contractual duties during the life of the pre-hire agreements. It is also clear that the Unions are not now suing to enforce the rights of J & N Steel employees who were employed at some point prior to expiration of the pre-hire agreements, as was in the case in *Litton*.

Rather, they are grieving J & N Steel's current status as a non-union contractor *in a general sense.* Because the grievances do not involve facts and occurrences that arose before expiration, or relate to rights that accrued or vested under the pre-hire agreements, or concern rights that, under normal principles of contract interpretation, survive expiration of pre-hire agreements, J & N Steel has no contractual duty to arbitrate the Unions' grievances. *See Litton, supra.*

### 5.

Our decision rests on the unique facts of the case. Over ten years ago, the Unions sent new pre-hire agreements for J & N Steel's expected signature precisely because the signed ones had expired and because J & N Steel could not obtain union labor without signing them. J & N Steel did not sign the new pre-hire agreements, despite the Unions request to do so. The Unions now seek to resurrect the "evergreen clauses," and perhaps only the "evergreen clauses," [6] in the very same agreements which they have long since considered expired. The Unions' anomalous position appears motivated more as a positioning for a subsequent claim for delinquent fringe benefit contributions than to enforce the rights of any union members.

While the magistrate judge approached the issue differently,[7] the magistrate judge did not err in determining that no present contractual relationship exists between the parties. Indeed, there is none. And because there is no enforceable contract providing for arbitration between the parties, under the authority of *Litton,* J & N Steel cannot be forced to arbitrate the Unions' grievance.

### V.

For the reasons stated above, the decision of the magistrate judge is AFFIRMED.

DAUGHTREY, Circuit Judge, dissenting.

DAUGHTREY, Circuit Judge.

The majority holds that the Unions, by their conduct, explicitly terminated the collective bargaining agreements at issue in this case, relieving J & N Steel of its contractual obligation to arbitrate all disputes arising from those agreements. I believe the question of whether the Unions' conduct may constitute proper notice of termination such that J & N's obligations would end is a question that must be submitted to arbitration under the agreements' express terms. I therefore find the resolution of that question to lie outside the purview of both this court and the court below, and respectfully dissent.

As a general rule, "[the] court's role is limited to deciding if 'the party seeking arbitration is making a claim which on its face is governed by the contract.'" *General Drivers, Salesmen, and Warehousemen's Local Union No. 984 v. Malone & Hyde, Inc.,* 23 F.3d 1039, 1043 (6th Cir.

---

**6.** While the Unions argue that J & N Steel is bound by the terms of the signed pre-hire agreements to arbitrate the parties' dispute, there is no evidence in the record that the Unions would in fact supply union labor to J & N Steel under the terms of the signed pre-hire agreements. As the magistrate judge stated: "Neither Union is willing to provide members to work for J & N Steel today under the terms of the old contracts." (JA at p. 70). Moreover, while unclear, it appears that the Unions may have at some point sought to

bind J & N Steel to the terms of the current pre-hire agreements between the Unions and the multi-employer associations. All of this provides further support for our finding that the Unions' grievances are not arbitrable under *Litton.*

**7.** *See Brown v. Tidwell,* 169 F.3d 330, 332 (6th Cir.1999) (the court may affirm on different grounds).

1994) (quoting *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)). At issue in this case is whether the collective bargaining agreements entered into by the Unions and J & N Steel were terminated by the Unions' conduct, or whether by virtue of their respective evergreen clauses, they remain in effect. Stated more narrowly, the question becomes whether the conduct of the Unions in the period between the time the agreements were signed and the time that the present grievance was filed constitutes "written notice" such that the agreements ceased to renew and were terminated under the provisions of their respective duration and termination clauses.

The arbitration clauses contained in the collective bargaining agreements are remarkably broad.[8] Both require that the arbitrator "shall have jurisdiction over *all* questions involving the interpretation and application of *any* section of this agreement." (Emphasis added.) Such breadth not only strengthens the presumption of arbitrability in this case, *see AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Malone & Hyde, Inc.*, 23 F.3d at 1044, but also makes inescapable the conclusion that the resolution of any dispute regarding inter-

pretation of the agreements' terms must be submitted to an arbitrator. The dispute before us now is whether the "written notice" requirement of the agreements' duration and termination clauses may be met by a union's actions. Accordingly, I find that this case is precisely what the majority says it is not: one requiring an examination or interpretation of the terms of the evergreen clauses contained in the pre-hire agreements.

While the majority asserts that it is the proper role of this court to evaluate the Unions' conduct and hold that it "undisputedly show[s] that the signed pre-hire agreements were no longer in effect," I believe that making such a determination entails an interpretation of the duration and termination provisions of the agreements that is expressly reserved to the arbitrator by the terms of termination provisions of the agreements that is expressly reserved to the arbitrator by the terms of the contracts which the parties signed. This court must not usurp that role. I would, therefore, reverse the district court's grant of summary judgment to J & N Steel and order that the matter be submitted to arbitration.

---

**8.** The arbitration clause from Local 44's agreement with J & N Steel reads, in pertinent part:

Settlement of Disputes: Any dispute as to the proper interpretation of this Agreement shall be handled in the first instance by representatives of the union and the Employer, and if they fail to reach a settlement within five (5) days it shall be referred to a Board of Arbitration composed of one (1) person appointed by each part, the two (2) so appointed to select a third member.... The Board of Arbitration shall have jurisdiction over all questions involving the interpretation and application of any section of this agreement.

The arbitration clause from Local 290's agreement with J & N Steel reads, in pertinent part:
Settlement of Disputes: A dispute as to the proper interpretation of this Agreement shall be handled in the first instance by a representative of the Union and the Employer, and if they fail to reach a settlement within five (5) days, it shall be referred to arbitration at the election of either party, by notifying the other party of its intention to appeal to arbitration in writing.... The Arbitrator shall have jurisdiction over all questions involving the interpretation and application of any section of this Agreement.